[No. 22750.   Department Two.   January 5, 1931.]

J. R. WATKINS COMPANY, *Respondent*, v. JAMES S. BRUND *et al., Appellants.*[1]

*Fred M. Bond,* for appellant.

*Welsh & Welsh,* for respondent.

BEELER, J.—The facts are unquestioned and undisputed. They may be summarized as follows:

Plaintiff, a foreign corporation, with its principal office at Winona, Minnesota, was engaged in selling goods, wares and merchandise, and during the year

[1] Reported in 294 Pac. 1024.

1921, entered into a written contract with the defendant Brund, whereby he was given the exclusive right to handle and sell plaintiff's wares in Pacific and Wahkiakum counties, Washington, except within the incorporated municipalities therein located, which contract contained a guaranty clause signed by Charley Robinson and H. A. Kalb, as sureties. Some time prior to April 22, 1922, Robinson died, and thereupon the plaintiff insisted that Brund execute a new contract which should contain a guaranty clause executed by two sureties; and accordingly Brund interviewed the defendant Joseph Buerkli, a farmer, at his ranch in Pacific county, and assured him that he could procure the signature of Kalb as surety, and if Kalb refused to sign, the instrument would not be delivered to the Watkins Company, and would not be used for any purpose. Relying thereon Buerkli signed the guaranty clause of the contract. Brund did neither, but on the contrary procured the signature of one George J. Heim, financially irresponsible, and delivered the instrument to plaintiff. Plaintiff was not a party to, and had no knowledge whatsoever of, the negotiations between Brund and Buerkli; and this new contract, dated April 22, 1922, determined and fixed the amount due and owing by Brund to plaintiff under the previous contract of 1921, being the sum of $988.54, and extended the time of payment until March 1, 1923; and the sureties, Buerkli and Heim, jointly and severally promised, agreed and guaranteed the full payment thereof, and the full performance of the contract; that on June 27, 1922, plaintiff, from its headquarters at Winona, Minnesota, addressed a letter to the defendant Buerkli, stating:

"We are pleased to inform you that we have received and accepted the contract of James S. Brund

which you signed as surety, contract dated April 22, 1922.''

Buerkli received this letter July 3, 1922. Plaintiff, acting on this contract, furnished goods to Brund, who continued to sell plaintiff's products until March 1, 1923, and not having paid any part of the original indebtedness of $988.54, and having incurred an additional indebtedness of $42.18, suit was brought on two causes of action. In the first cause of action, plaintiff sought to recover the sum of $988.54, and in the second, the sum of $42.18.

The defendants Brund and Heim defaulted. Only Buerkli appeared. In his answer he denied all of the material allegations of the complaint, and by way of an affirmative defense alleged that, at the time he signed the guaranty clause of the contract as surety, Brund promised and agreed to procure the signature of Kalb, and if unsuccessful the contract would not be delivered to the plaintiff, and would not be used for any purpose. He further set up the defense that the guaranty clause in the contract was not signed by Kalb, and that the plaintiff knew, or should have known, these facts. All these matters were denied by the plaintiff in its reply. The cause was tried to the court without a jury, resulting in a judgment against all of the defendants on both causes of action, including costs. Only the defendant Buerkli has appealed from the judgment.

■ Appellant Buerkli concedes the judgment of the lower court to be correct as to the second cause of action, but insists that the court erred in awarding judgment for respondent on the first cause of action, for the reason that Brund was indebted to respondent in the sum of $988.54 before he attached his signature as surety to the guaranty clause. This argument, while ingenious, is unsound. Three new and valuable considerations were created by the contract and by the

guaranty clause in the contract: First, Brund was given the exclusive right to sell the Watkins products in Pacific and Wahkiakum counties from April 22, 1922, to March 1, 1923; second, respondent forbore the collection of its past due indebtedness of $988.54, and extended the time of payment from April 22, 1922, to March 1, 1923; and third, the sureties Robinson and Kalb were released on the contract executed in 1921 by reason of extending the time of payment. This contract had as one of its provisions the following:

"The parties hereto for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due the said company [respondent] is the sum of $988.54, which sum the second party [Brund] agrees to pay and said company agrees to receive, and payment of which is extended to March 1, 1923."

The guaranty clause of the contract signed by the sureties Buerkli and Heim, so far as relevant to this inquiry, provides:

"In consideration of one dollar in hand paid by the J. R. Watkins Company, receipt whereof is hereby acknowledged, and the execution of the foregoing agreement, which we have read or heard read and hereby agree and assent to, and the sale and delivery by it to the party of the second part, as vendee, of goods, and other articles, and the extension of the time of payment of the indebtedness now due from him to the said company, as therein provided, we, the undersigned sureties, jointly and severally and unconditionally promise and agree and guarantee the full payment of such indebtedness, the amount of which is now written in said agreement, and jointly and severally and unconditionally promise to pay for said goods and other articles and to prepay freight, express or postal charges thereon at the time and place and in the manner in said agreement provided."

The precise question is, can Buerkli be held on the guaranty clause of the contract as cosurety because

Brund had induced him to sign by positive assurances that he would procure the signature of Kalb as cosurety, otherwise the instrument would not be delivered to plaintiff, both of which conditions were breached by Brund.

The trial court found, which finding is supported by the record, that respondent knew nothing whatever of the understanding or agreement between Brund and Buerkli, and furthermore, that it had no means of obtaining any knowledge concerning the negotiations between them. This is very obvious, because respondent, with its office at Winona, Minnesota, was distant some two thousand miles at the time Buerkli and Brund had their understanding or agreement on the latter's ranch, at which time appellant signed the guaranty clause. It was wholly a secret understanding between appellant and Brund.

In the case of *Smith v. Tukwila,* 118 Wash. 266, 203 Pac. 369, we said:

"A discussion of the cases which relieve persons signing the bond as surety, which has been delivered in such a way that the person receiving it must have been charged with constructive notice that it was not intended to operate except upon compliance with certain conditions, is unnecessary here because there is nothing in this record that would justify a finding that the appellant either had actual or constructive notice of any condition alleged to exist in this regard. This rule is recognized and stated in 21 R. C. L., 968, as follows:

" 'Hence, the rule sustained by the great weight of authority is that the agreement of a surety with his principal that the latter shall not deliver a bond till the signature of another be procured as a cosurety will not relieve the surety of his liability on the bond, although the cosurety is not obtained, where there is nothing on the face of the bond, or in the attending circumstances, to apprise the taker that such further signature was called for, in order to complete the instrument. In such

cases the surety, having invested his principal with apparent authority to deliver the bond, is estopped to deny his obligation to the innocent holder, on the principle that where one of two innocent persons must suffer, the loss must fall on him who put it in the power of the third person to cause the loss.' "

Moreover, on April 22, 1922, respondent could have instituted suit on its claim of $988.54. This it did not do. It forbore or waived this advantage or right, and extended the time of payment for approximately one year. This was a distinct benefit—a valuable consideration—to Brund, and the sureties guaranteed it. It is not necessary that the consideration in order to bind the surety shall move to the surety. It may move to the third person for whom the surety becomes responsible. The rule is clearly announced in 6. R. C. L., p. 660:

"Where there is a request to forbear, there ought to be no doubt that the forbearance to sue on an enforcible claim or an extension of time of payment thereof is a sufficient consideration for a promise. It is not necessary that the promisor should be benefited by such forbearance. Therefore, forbearance to sue is a sufficient consideration for the promise of a third person."

This court, in passing on a similar question, in the case of *Katz v. Judd,* 108 Wash. 557, 185 Pac. 613, said:

"The postponement of the obligation to a future date was a new consideration moving to him and operated as a present consideration for the execution of the new note. The new note was accepted only after appellant had signed it. Conceding that she was not obligated on the original note, she became obligated on the new one by her act of signing as an accommodation party, notwithstanding she personally received no consideration for executing the note. Rem. Code, § 3420; *Northern Bank & Trust Co. v. Graves,* 79 Wash. 411, 140 Pac. 328; *Metzger v. Sigall,* 83 Wash. 80, 145 Pac.

72; *Skagit State Bank v. Moody,* 86 Wash. 286, 150 Pac. 425, L. R. A. 1916A, 1215; *Knickerbocker Co. v. Hawkins,* 102 Wash. 582, 173 Pac. 628.''

See, also, 3 R. C. L., p. 940, § 136.

Furthermore, extending the time of payment on the amount due under the original contract of 1921 released Robinson and Kalb thereon. The rule is clearly announced in 21 R. C. L., p. 1018, § 6.

''It is a familiar rule that if a creditor, by positive contract with the principal debtor, and without the consent of the surety, extends the time of payment, he thereby discharges the surety. This is in accordance with the broader and more general doctrine that the engagement of a surety is not to be enlarged or varied without his consent, and that any agreement to do so by the creditor is an attempt on his part to make for the surety a new contract, to which he never assented. The time of payment may be quite as important a consideration to the surety as the amount he has promised conditionally to pay. He may have agreed to become responsible, because he then had in his possession property of the principal debtor sufficient to indemnify him against loss. When the time fixed in the contract has passed without notification to him of default of the principal, he may naturally suppose his liability to be at an end, and thus release the means of reimbursement, to his ultimate loss, if the changed contract is subsequently enforced against him.''

But appellant contends that the controlling question in the case at bar is not that of consideration, but one of estoppel, and that the case should be decided according to the principles of estoppel, and cites authorities in support thereof: *Guild v. Thomas,* 54 Ala. 414, 25 Am. Rep. 703; *State Bank v. Evans,* 15 N. J. Law 155, 28 Am. Dec. 400; *Sharp v. United States,* 4 Watts (Pa. St.) 21, 28 Am. Dec. 676; *People v. Bostwick,* 32 N. Y. 445; *Sessions v. Jones,* 6 How. (Miss.) 123; *Linn County, etc. v. Farris,* 52 Mo. 75.

We have examined all these cases. An analysis of a few of them will illustrate that they are not applicable to the facts in the case under consideration. The first case cited involved a suit against a surety on an injunction bond. The statutes of Alabama require an injunction bond to be made payable to, and approved by, the registrar of a court of chancery. The case merely holds that a public officer, such as the registrar of a court of chancery, charged with the duty to take and approve a bond, fails to exercise due diligence unless the bond be signed in his presence and delivered by all of the obligors, or by some one having authority in writing, properly attested, to bind the parties concerned.

In the second case cited, a suit was brought by the obligee against a surety on a bond which was delivered by the principal to the obligee without first obtaining the signature of the other surety named therein. *The bond on its very face showed* that it was not to take effect until such other surety had executed the bond. It was held that, inasmuch as the obligee had notice that the condition had not been performed, he could not maintain the action.

In the third case cited, *Sharp v. United States, supra,* suit was brought by the United States government against Sharp, as surety, on a bond required of distillers by virtue of the act of congress passed April 19, 1816. One John Laughlin was named principal, and written in on the face of the bond were the names of William Laughlin and Alexander Sharp as sureties. The opinion states:

"The bond, at the time Alexander Sharp affixed his signature to it, was filled up with the above named, and contains the reference to the act of congress, which requires, as before remarked, a bond, *with two or more*

*sureties. At the time, therefore, that Alexander Sharp, who was the obligor second named, signed the bond, he had a right to believe that it was the intention of all of the parties that the bond was to be taken in strict conformity with the act of congress, and that William Laughlin would also execute the bond.* If, therefore, this reasonable expectation was disappointed, either wilfully or negligently, he has cause to complain. His signature is conditional, and unless it be shown that the condition, viz., the execution of the bond by William Laughlin, whose name was in the body of it, has been dispensed with by him, he has a good defense to the suit. A man may be willing to bind himself jointly with another, and still be unwilling to make himself alone responsible. We cannot agree with the court of common pleas that there is nothing justifying the construction from the *face of the bond,* in the absence of any other proof, that it is void as to the present defendant.''

The appendix attached to the decision contains an exhaustive search of the authorities under the caption, *Cases Where Obligee Has Not Notice,* and states:

''The principal difficulty and conflict arise in that class of cases where a surety signs a bond, and delivers it to his principal, upon a condition of which the obligee has no notice, that other persons not named therein are also to sign it, and the principal delivers it to the obligee without obtaining the additional signatures. . . . The better doctrine is, therefore, that when the surety signs a bond complete in itself, and entrusts it to his principal or other co-obligor, to be delivered to the obligee after obtaining other signatures, and it is delivered without performance of the oral condition, he is bound by it if the obligee had no notice of the condition, upon the principle that where one of two innocent persons must suffer a loss, he shall bear it whose want of caution occasioned it. This, too, is the doctrine of the better considered cases.'' (citing cases.)

In the above case the instrument bore on its face evidence of its incompleteness, whereas, in the case at bar

the instrument, when it reached the plaintiff, was complete on its face. Furthermore, the Watkins Company had no knowledge of the secret understanding or agreement between Buerkli and Brund. Brund was in no wise the agent of respondent. Brund was respondent's customer. Brund was one of the contracting parties, and one of the conditions imposed by respondent for extending the time of payment of the debt due April 22, 1922, was that he procure a new contract executed by himself and two sureties. All the negotiations leading up to the execution of the guaranty clause of the contract were solely between Brund and Buerkli. Respondent took no part therein whatsoever, and clearly it can not be estopped from asserting its claim against the surety Buerkli.

The judgment is affirmed.

MITCHELL, C. J., BEALS, MILLARD, and FULLERTON, JJ., concur.