[No. 25123. Department Two. January 18, 1935.]

HOWARD H. HANSEN, *as State Supervisor of Banking, Respondent,* v. GEORGE H. PARSONS *et al., Defendants,* COLEN S. SMITH *et al., Appellants.*[1]

*W. B. Mitchell,* for appellants.

*Dillard & Powell, Robertson & Smith,* and *Hart Snyder,* for respondent.

[1]Reported in 40 P. (2d) 121.

414

GERAGHTY, J.—This action is brought by the plaintiff supervisor of banking, as liquidator of The American Bank of Spokane, against the defendants to recover upon a promissory note. Parsons and wife, who executed the note and mortgage originally, were named as defendants in the complaint, but service was not had upon them, and they did not appear in the action. At the close of the evidence in the case, the trial court granted the motion of plaintiff for a directed verdict in his favor. From the judgment entered upon the verdict, the defendants Smith appeal.

George H. Parsons and wife were the owners of certain real estate in Spokane county. On November 27, 1927, they executed and delivered to The American Bank the note here sued upon, in the sum of eighty-five hundred dollars. The note was payable December 1, 1930, and was secured by a mortgage upon the real estate owned by the Parsons. Before the note became due, the appellants Smith purchased the real estate from the Parsons. By the terms of the conveyance, the Smiths took title subject to the encumbrance, but did not assume payment of the note.

Before the note became due, the Smiths entered into negotiations for an extension of time for payment of the amount due under the mortgage. A six-months' installment of interest was paid in November, 1930. In April, 1931, the Smiths paid one thousand dollars on account of the principal of the mortgage, and at the same time added their signatures to the note below the signatures of the Parsons. The bank made a notation in pencil on the bottom of the note indicating its extension to December 1, 1931. Later, the due date in this pencil notation was extended to December 1, 1932. The bank closed its doors in April, 1932, and the banking department of the state took charge of its affairs.

The appellants contended in the court below that they were induced to sign the note by fraudulent misrepresentations on the part of J. D. Leigh, vice-president of The American Bank. The respondent denied any misrepresentations, and contended that the appellants signed the note with full knowledge of all pertinent facts and in fulfillment of an agreement for an extension of time for paying the note and mortgage. Colen S. Smith, the husband, testified, in part:

"Q. Just tell the court and jury what was the conversation between you at that time. A. We went up to the American Bank, I and my wife, and the note was coming due and we wanted an extension of time until we could get time to dispose of the land or something, and made a deal with Mr. Leigh whereby we would pay him a thousand dollars on it and he would give us an extension of time, which he did, for the purpose of giving us a chance to dispose of the land,—and interest and so much—and he gave us a note and after we paid the money he brought out the note and says, 'Just sign here,' and that is all there was to it. . . . the conversation was that was all there was required, he says, for the extension, was just to sign here after we paid him the money. There was no agreement whereby I would ever pay the balance up at no time, I never agreed to pay that . . ."

On cross-examination:

"Q. You were planning to sell the land at that time, weren't you? A. Yes, sir. Q. You expected the note to be paid by a deal on the property? A. Yes, sir. . . . Q. You were both there together? A. Yes, sir, we were both there together. Q. You knew it was a note you were signing? A. Well, in a way, I really knew it was a note. Q. In the course of your life you signed quite a few notes? A. No, I never. Q. You never signed any before this? A. No. Q. Didn't you read the note over? A. No, sir, I did not, just trusted to Mr. Leigh. Q. He told you it was a note and then 'Sign on this note and we will extend it?' A. Yes, sir. Q. You did that? A. Yes, sir. THE COURT: As

I understand you to say, Mr. Leigh said, 'Sign right here and we will extend it'? A. Yes, sir. THE COURT: And you signed it? A. Yes, sir."

Mrs. Smith testified:

"Q. Just tell the jury what was said at that time by Mr. Leigh and by yourself and by your husband. A. We went in to see Mr. Leigh to get an extension of time so we could handle the land a little easier and get a chance of disposing of it in some way, and we gave him a thousand dollars on this extension of time, and after we paid the thousand dollar check he asked us to wait a minute, and he went in the room, some room away from where we were, and brought out a paper and asked us to sign it, and I did not pay very much attention to it because I had faith in Mr. Leigh and I did not think it was necessary to trouble very much, but we signed it thinking we would get an extension of time—some bank form. . . . Q. What did you understand at the time you were signing that note? A. Well, I took it, it was some bank form for an extension of time or something like that . . . ."

On cross-examination:

"Q. Did you read the note over when you signed it? A. No, I did not. Q. Did you know what it was? A. Well, I did not pay very much attention. Q. Mr. Leigh told you you would have to sign something? A. Yes, sir, 'sign here.' Q. Yes, 'sign here,' and didn't you pay any attention to what you were signing? A. No, I did not pay any attention to what I was signing. I figured it was a bank form for that purpose, an extension of time . . . Q. If Parsons' name was on there, you knew it was not just a blank form, it was not any new paper he had with Parsons' name on it? A. It could have been an extension of time, could it not? Q. I am asking you if when you saw Parsons' name, if you did not realize this was an old paper you were signing and not a new one Mr. Leigh had just drawn? A. I knew it was an old one, yes, sir. Q. You knew it was an old one in connection with the deal? A. In connection with the deal. Q. You did not pay any particular attention to what it was? A. No. Q.

You knew that you had to sign it to get the extension? A. Yes, sir, that is what I figured, it was an extension of time.''

J. D. Leigh, who was vice-president of The American Bank and had charge of the negotiations with the appellants for the extension, called as a witness by the appellants, testified that, shortly before the note became due, December 1, 1930, apparently on November 15th, the Smiths came to the bank in relation to the payment of the mortgage and said they did not think they would be able to take it up in full and wanted an extension. They said they would pay the interest at that time if the note was extended for six months, and the bank agreed to extend it provided they signed the note. While the Smiths testified that the note was signed by them on April 11, 1931, when the thousand dollars was paid on account of the principal, Leigh testified he was not sure of the date when the Smiths signed the note, but thought it was signed in November when the first extension of six months was granted, and that, upon the principal payment in April, the extension for the full year was granted.

The appellants' claim that they were induced to sign the original note by fraud and misrepresentation finds no support in their own testimony. At most, their testimony only shows that Leigh said they would have to sign some paper to secure an extension. In signing it, they could have had no misunderstanding as to its import. They could not have been deceived into the belief that it was a mere bank form evidencing an extension of the time for payment, because the note bore upon its face the signatures of Parsons and wife showing it to be not a new form, but the original note. They admit they signed voluntarily and could have read the instrument to which they set their names if they had chosen to do so. The language was plain

and unmistakable. They can not avoid the consequence of their signatures by saying they closed their eyes to its contents.

"Respondent cannot now say that she was fraudulently misled into signing the paper, under the rule already announced by this court, which prevents one who has the means of knowledge before him, and who refuses or neglects to avail himself thereof, from asserting that he was deceived or defrauded." *Sherman v. Sweeny*, 29 Wash. 321, 69 Pac. 1117.

We think the court correctly directed a verdict in favor of respondent on the issue of fact raised by appellants' allegations of fraud and misrepresentation.

■ Appellants, in signing the note, became makers and bound as if they had originally signed it.

"One who, for a sufficient consideration, adds his signature to a joint note, or to a joint and several note, after its delivery, is in like manner a maker and is bound if there was a sufficient consideration therefor. So if he adds his name below the signature of a sole maker." 8 C. J. 69.

■ Appellants contend there was no consideration for their signatures to the note. The extension of time of payment and forbearance from bringing suit for foreclosure of the mortgage was a sufficient consideration. *Nicholson v. Neary*, 77 Wash. 294, 137 Pac. 492.

"Refraining from bringing a suit may furnish a consideration. The actual forbearance, or the promise to forbear to prosecute a claim on which one has a right to sue, is universally held to be a sufficient consideration." 13 C. J. 344.

Appellants also contend that, at the time they signed the note, it was overdue, and that, under the statutory rule, a note signed after maturity becomes payable on demand; and therefore there was no consideration moving to them for their signatures, since

the note remained immediately payable. We think the testimony of appellants themselves corroborates Leigh's statement that a six-months' extension was granted in November, 1930. But assuming appellants' contention as to the date of the extension to be correct and that the six-months' formal extension was not given in November, before maturity, there was an extension, in fact, upon the request of appellants, and this, under the authorities, would be a sufficient consideration for their signing the note.

"Where there is a request to forbear, there ought to be no doubt that forbearance to sue on an enforceable claim or an extension of the time for the payment thereof is a sufficient consideration for a promise. . . . Similarly forbearance or a promise to forbear from enforcing a lien or issuing a writ of possession or execution is a sufficient consideration for a promise." 6 R. C. L. 660.

The foregoing statement is quoted with approval in *Watkins Co. v. Brund,* 160 Wash. 183, 294 Pac. 1024.

The judgment will be affirmed.

BEALS, TOLMAN, HOLCOMB, and BLAKE, JJ., concur.