[No. 2600-3. Division Three. January 16, 1979.]

WALTER W. LUTZ, *Respondent,* v. HOWARD H. GATLIN, ET AL, *Appellants.*

*Delay, Curran & Boling* and *Joseph P. Delay,* for appellants.

*MacGillivray & Jones* and *Randall L. Stamper,* for respondent.

McINTURFF, J.—The defendant, Howard Gatlin, appeals from a judgment holding him liable as a guarantor on a $4,000 promissory note payable to the plaintiff, Dr. Walter Lutz.

On March 10, 1972, Dr. Lutz loaned $4,000 to Design Specialties, Inc. (Design) for 90 days. Design was a Washington corporation in which Mr. Gatlin held a one–third interest. Design was the sole owner of Centaur Inn of Eureka (Centaur), a California corporation. The note was not paid when due. On September 5, 1972, Dr. Lutz agreed to surrender the promissory note to Design in exchange for a promise to assign a 5 percent equity interest in Centaur Inn. Dr. Lutz had the option, at the end of 90 days, to retain the equity interest or to return the interest and receive $4,000. Roger D. Strickler, then president of Design, signed this agreement and accepted surrender of the note from Lutz. At the end of 90 days, Lutz elected to retain the equity interest. Centaur began losing money in September 1973 and was declared bankrupt in January 1974. Design also failed. Despite repeated requests, Dr. Lutz was never given written acknowledgment of his ownership interest in Centaur. Finally, on September 12, 1974, he informed Mr. Gatlin by letter that he was withdrawing his offer to accept the 5 percent equity interest and made demand for the return of the $4,000 represented by the loan, plus interest. Dr. Lutz was not able to produce the $4,000 note at trial; however, its terms were established by parol evidence.

The court awarded Dr. Lutz $4,000 plus interest and fees on the promissory note. The court held that failure to

deliver some written acknowledgement of Dr. Lutz' equitable interest reinstated the original note for $4,000.

Initially, Mr. Gatlin contends that both the statute of frauds and the statute of limitations require dismissal of this action. His argument may be summarized. First, contracts to answer for the debts of another must be in writing. RCW 19.36.010.[1] Mr. Lutz failed to produce the note in question and thus the court erred in allowing its terms to be established by parol evidence. Second, because this was an oral contract, a 3–year statute of limitations applies. RCW 4.16.080(3).[2] Mr. Gatlin argues that the cause of action accrued on June 8, 1972, and expired on June 9, 1975, and therefore this action, commenced in August 1975, is barred by the statute of limitations.

█ Contrary to the contentions of Mr. Gatlin, the record shows that this is not a case involving an oral contract, but rather a written contract which was subsequently lost or destroyed. Thus, the writing requirement of the statute of frauds was satisfied. In addition, since this action concerns a written instrument, the 6–year statute of limitations applies. RCW 4.16.040.[3]

█ RCW 62A.3–804 provides a method of recovery on instruments which are lost, destroyed or stolen. It provides:

---

[1]RCW 19.36.010.

"In the following cases . . . any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith . . . (2) Every special promise to answer for the debt, default, or misdoings of another person; . . ."

[2]RCW 4.16.080(3).

"Within 3 years:

". . .

"(3) An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument;"

[3]RCW 4.16.040.

"Within 6 years:

". . .

"(2) An action upon a contract in writing, or a liability express or implied arising out of a written agreement."

The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

To establish a lost instrument, the evidence must be clear, cogent and convincing.[4]

With these principles in mind, our primary inquiry thus becomes whether there is substantial evidence to support the findings of the trial court with regard to the terms of the promissory note. Mr. Gatlin objects to the following finding of fact entered by the trial court:

On or about March 10, 1972, plaintiff, Dr. Walter Lutz, made a $4,000 loan to Design Specialties, Inc., said loan was evidenced by a note which was personally guaranteed by Howard H. Gatlin. The note was due on June 8, 1972, with interest at the rate of 12 percent per annum and with a standard provision concerning attorney's fees. The attorney fee provision provided that in the event the plaintiff had to commence suit to collect, that the signators on the note would pay reasonable attorney's fees and costs. The note was not paid on June 8, 1972, by Design Specialties, Inc.

The record shows that Dr. Lutz loaned Design Specialties $30,000 in March 1971 and received a note in exchange. Dr. Lutz' daughter also made a loan to Design for $7,000 and received a similar promissory note. Dr. Lutz made a second loan to Design Specialties in the amount of $4,000 and received a second note. All three notes were similar in form and contained similar terms. Dr. Lutz testified that he surrendered the second note to Mr. Strickler, an officer of Design. Thereafter, no one has been able to locate the note. Mr. Strickler testified as to the execution of the note and

---

[4]*Deglow v. Smith,* 77 Wn.2d 128, 129, 459 P.2d 786 (1969); *Dahlgren v. Blomeen,* 49 Wn.2d 47, 52, 298 P.2d 479 (1956); *Johnson v. Wheeler,* 41 Wn.2d 246, 248, 248 P.2d 558 (1952); *Scurry v. Seattle,* 56 Wash. 1, 2, 104 P. 1129 (1909).

his presence at the signing. Mr. Strickler and Dr. Lutz also testified to the contents of the note. Finally, Mr. Gatlin never disputed the existence of the note, but simply stated that he could not remember. Based on the above evidence, we find that there was substantial evidence to support the finding as to the existence and terms of the promissory note.

Mr. Gatlin next assigns error to the court's finding that he had given his personal guaranty on the note. Mr. Gatlin contends that he signed as a surety and not as a guarantor. Thus, this action should have been dismissed for Dr. Lutz' failure to sue the principal, Design.

■ RCW 62A.3–416(1) explains the meaning and significance of words of guaranty added to a signature. The section provides:

> (1) "Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor *without resort by the holder to any other party.*

(Italics ours.) RCW 62A.3–416(3) states the rule of construction regarding words of guaranty. "(3) Words of guaranty which do not otherwise specify[,] guarantee payment." Thus, when there is ambiguity with respect to the nature of the undertaking, there is a presumption that the person signed as a guarantor and not as a surety.

The record confirms the finding that Gatlin signed the note in the following manner: "Personally guaranteed by Howard Gatlin." Mr. Strickler stated that during the negotiations, Mr. Gatlin:

> . . . kept stressing to him [Dr. Lutz] that it was the only investment that Dr. Lutz would ever get involved in that would be 100 percent guaranteed, that he could not lose money and that he stood to make nothing but money. . . . It was all centered around the fact that he was going to guarantee the loan 100 percent.

These statements strongly indicate that Mr. Gatlin signed the note and intended to personally guarantee the loan. The only rebuttal evidence which Mr. Gatlin offered

to these statements was that he did not recall whether he had ever signed the note. We conclude there was sufficient evidence to show that Gatlin signed as a guarantor. There is nothing in the record to overcome the presumption that payment was guaranteed. RCW 62A.3-416(3).

An endorser who guarantees payment waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawer. The liability of an endorser becomes indistinguishable from that of a comaker. Comment 1, RCWA 62A.3-416, Uniform Commercial Code. Thus, when the note remained unpaid, Dr. Lutz had the option of proceeding against the maker, Design, or the personal guarantor, Mr. Gatlin. Because of the nature of Mr. Gatlin's liability flowing from his signature, he could not complain when Dr. Lutz decided to proceed solely against him.

Next, Mr. Gatlin contends that he was discharged as a guarantor when Dr. Lutz surrendered the $4,000 note to Design. He argues that any material alteration of the terms of an original note will operate to discharge the party signing as a guarantor.

Generally, the liability of a surety is confined to his express undertaking. If a creditor contracts with a principal debtor to extend the time of payment without the consent of the surety, the surety is discharged.[5]

On the other hand, a guarantor is not released if he consents to the extension of time. *Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d 571, 574, 573 P.2d 1316 (1978). In addition, principal shareholders who sign a note with a corporation intending to be liable only as a surety or guarantor are not accorded the same favorable treatment which the law affords a voluntary surety.

> where an extension of time is granted to the corporation for a consideration, the stockholder, although he did not consent to the extension, is not released, unless he suffered some actual injury as a result of the extension.

---

[5] *J.R. Watkins Co. v. Brund,* 160 Wash. 183, 189, 294 P. 1024 (1931); *Tupper v. Hartman,* 121 Wash. 142, 144, 208 P. 1103 (1922); *Nelson v. Flagg,* 18 Wash. 39, 42, 50 P. 571 (1897).

These cases proceed upon the theory that both the loan and the extension of the time of payments benefit the corporation's officers and stockholders by reason of their interest in the debtor corporation, making them akin to the compensated surety, who, according to the general rule, is not released by an extension.

(Citations omitted.) *Lincoln v. Transamerica Inv. Corp.*, *supra* at 575; Restatement of the Law of Security § 129(2) (1941).

Here, exhibits were submitted by counsel which demonstrate Mr. Gatlin's participation in and consent to the agreement with Dr. Lutz to exchange the note for a promise to assign a 5 percent equity interest in Centaur Inn. Therefore, based upon *Lincoln v. Transamerica Inv. Corp.* and Mr. Gatlin's knowledge and consent, he cannot now be heard to complain of the extension of time for payment of the note or the consent to exchange the note for a promise to assign an equity in Centaur Inn. Furthermore, under the rule in *Lincoln v. Transamerica Inv. Corp., supra,* there is no evidence that Mr. Gatlin suffered any actual injury as a result of the September exchange agreement.

Finally, Mr. Gatlin argues that the September 1972 agreement was a new contract, intended as a substitute for the promissory note. Although he was President of Design by September 1972, he argues that he had no obligation to perform the ministerial act of drafting an assignment to Lutz of the 5 percent equity interest. He argues that the trial court disregarded the clear intent of the parties to cancel the note. Therefore, the court erred in reinstating the note upon failure to provide written acknowledgment of Lutz' equity interest. We disagree.

■ RCW 62A.3–601 contains a list of the code sections under which the parties are discharged from liability on an instrument. It provides in pertinent part:

(1) The extent of the discharge of any party from liability on an instrument is governed by the sections on
(a) payment or satisfaction (RCW 62A.3–603); . . .

RCW 62A.3–603(1) provides in part: "The liability of any

party is discharged to the extent of his payment or satisfaction to the holder . . ." The code does not define the word payment. However, we know that an instrument, to be negotiable, must be payable in money. RCW 62A.3–104(1)(b).[6] On the other hand, there is nothing in the code to prevent the holder of a note from accepting payment in some form other than money. RCW 62A.1–102(3).[7] Here, Dr. Lutz agreed to take a 5 percent equity interest in Centaur Inn in lieu of receiving payment in cash as per the promissory note. Over the course of the next 2 years, Dr. Lutz made repeated requests for some evidence of his ownership interest in Centaur. But, he received nothing. Thus, under the code, there was no payment to the holder, and thus no discharge of liability on the original note. There was a breach of the agreement to give a 5 percent equity interest in exchange for the payment of cash under the note. When no evidence of this ownership interest was forthcoming within a reasonable length of time, Dr. Lutz was justified in considering the exchange agreement at an end. He was thereafter free to pursue his rights under the original note and to obtain payment according to its terms, including the personal guaranty by Mr. Gatlin. The note was never discharged.

Dr. Lutz shall be granted $1,000 as attorney's fees and costs on appeal.

Judgment of the Superior Court is affirmed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied February 13, 1979.

Review denied by Supreme Court May 25, 1979.

---

[6]RCW 62A.3–104(1)(b).

"(1) Any writing to be a negotiable instrument within this article must

"(b) contain an unconditional promise or order to pay a sum certain in money . . ."

[7]RCW 62A.1–102(3).

"The effect of provisions of this Title may be varied by agreement, except as otherwise provided in this Title . . ."