17 P.3d 1248 (2001)
104 Wash.App. 728
John C. BRAUT, as the successor in interest to Inseafuture, Inc., an administratively dissolved Washington corporation, Respondent,
v.
Arthur M. TARABOCHIA, Defendant,
James E. Wierzbicki and Susan K. Wierzbicki, husband and wife, and the marital community composed thereof; and Washington Federal Savings and Loan Association, a federally chartered savings and loan association, Appellants.
No. 46019-6-I.
Court of Appeals of Washington, Division 1.
February 12, 2001.
Eric Peter Gillett, Jeffrey W. Daly, Seattle, for Appellants.
Arthur M. Tarabochia, Charles Nelson Berry, Seattle, for Respondent.
*1249 AGID, C.J.
The Wierzbickis contest the trial court's admission of a photocopy of a promissory note in a mortgage foreclosure action. We conclude that the trial court based its decision to admit the photocopy on tenable grounds and affirm.

FACTS
John Braut, the former president, director, and majority shareholder of Inseafuture, Inc., a Washington corporation that has since been administratively dissolved, claims that on July 28, 1979, he loaned Arthur and Marilyn Tarabochia $30,000 secured by a recorded mortgage on their Seattle home. The Tarabochias never made a payment on this alleged loan.
When the Tarabochias divorced in August 1988, Marilyn received title to their Seattle home. When she died in 1995, her estate sold the property to James and Susan Wierzbicki. Apparently, the title company insuring the sale failed to discover the Inseafuture mortgage when it issued the title insurance, and as a result, funded a quiet title action brought by Marilyn's estate to remove the mortgage. During this proceeding, Braut could not produce any written documentation of the loan, so the court entered summary judgment in the estate's favor. Braut searched his records again and, seven days later, found a photocopy of a document titled "Collateral Agreement to Mortgage," signed by Tarabochia.[1] The court granted Inseafuture's motion for reconsideration, and Marilyn's estate voluntarily dismissed its claim.
In March 1997, Inseafuture instituted this action against Tarabochia, the Wierzbickis and Washington Federal Savings and Loan Association, seeking mortgage foreclosure and a deficiency judgment.[2] Before trial, the Wierzbickis and Washington Federal filed a motion in limine seeking to preclude admission of the photocopy of the collateral agreement. The trial court reserved its decision on the admissibility of the photocopy and related testimony until after it heard all the evidence. At trial, Braut testified that he transferred $30,000 to Marilyn in an unnamed coffee shop, but he could not remember the form of the transaction. Tarabochia testified that he did not remember Braut ever loaning him or his wife money, that he did not sign the collateral agreement,[3] and that before trial, Braut attempted to bribe him by offering him $5,000 to testify that the loan occurred.
At the close of evidence, the trial court decided to admit the photocopy of the collateral agreement:
The parties battled long and hard over whether or not Exhibit 4, the signed copy of the collateral agreement, should be admitted in evidence and collaterally what weight it should be given by the court. It is clear to the court that the preponderance of the evidence indicates that Art's signature on Exhibit 4 is not a forgery or a "cut and paste" job. Accordingly, Exhibit 4 is admitted.
Based on this conclusion, the court entered judgment against Tarabochia in the amount of $388,408.13, plus attorney fees and costs, and ordered that the mortgage be foreclosed.[4] The Wierzbickis and Washington Federal appeal.

*1250 DISCUSSION
The primary issue in this appeal is whether the trial court abused its discretion in admitting the photocopy of the collateral agreement.[5] The Wierzbickis argue that the Best Evidence Rule precludes its admission, that Braut failed to meet the evidentiary standard required by the Uniform Commerical Code to prove its contents, that the trial court applied the wrong burden of proof, and that if the collateral agreement had not been introduced, the trial court's ruling would not have been supported by substantial evidence.
Best Evidence Rule
The Best Evidence Rule, ER 1002, directs that the original is required to prove the content of a writing, recording, or photograph. But, under ER 1003, photocopies are admissible to the same extent as the original unless "a genuine question is raised as to the authenticity of the original" or "in the circumstances it would be unfair to admit the duplicate in lieu of the original." Tegland has suggested that it would be unfair to admit a duplicate if portions of the original were excised or altered in the duplication process, if the duplicate were illegible or inaudible, or if the original had been intentionally and fraudulently destroyed by the party offering the duplicate.[6]
In their challenge to admitting the note, the Wierzbickis contend that "[i]t is hard to imagine a set of circumstances under which the authenticity of a document could be more questionable than the present one." They cite Braut's inability to remember details about the transaction, his "miraculous" discovery of the copy after summary judgment had been entered against him, his alleged attempt to bribe Tarabochia into testifying that the loan occurred, and his considerable delay in attempting to collect on the alleged loan as evidence of the document's questionable reliability. They also assert that the trial court's failure to discuss the Best Evidence Rule demonstrates that it abused its discretion.
Washington courts have not addressed the circumstances in which a trial court abuses its discretion by admitting a duplicate of questionable authenticity. The Wierzbickis cite a Tenth Circuit decision, United States v. Haddock,[7] for the proposition that a trial court must be wary of admitting duplicates "`where the circumstances surrounding the execution of the writing present a substantial possibility of fraud.[8]'" While this is undoubtedly true, the Haddock court relied on this reasoning to affirm a lower court's refusal to admit a duplicate. Here, we review the court's decision to admit the photocopy for abuse of discretion, and will overturn it only if it was based on untenable grounds or reasons. We conclude that the record establishes a tenable basis for the trial court's decision.
First, Braut's failure to remember the details surrounding this alleged loan is not surprising given that the events occurred over 20 years ago and, in the intervening years, he suffered a beating that affected his memory. He clearly testified that he and Tarabochia met to discuss the terms of the loan and that he met with Marilyn a week later to transfer the agreed-upon sum. Second, John McPhee, an ex-FBI employee with 21 years of experience in examining disputed documents, testified after examining the photocopy that there is a "strong indication" that Tarabochia signed the document and that the signature "does not indicate a cut and paste" job. He testified that this was the highest degree of certainty he could give to a photocopy. Third, the record contains the notarized mortgage bearing the Tarabochias' signatures and referring to the "terms of an agreement bearing even date." The Wierzbickis do not explain why this mortgage would exist if the loan had not occurred. In addition, a declaration by Richard Arambaru, Inseafuture's attorney in 1979, states that he prepared the mortgage on the promissory note and had it recorded on August 16, 1979. This evidence, while not overwhelming, does establish tenable grounds for the trial court's decision to admit the photocopy.
*1251 The Wierzbickis' contention that Braut failed to prove the document's execution, delivery, and terms by "clear, cogent and convincing" evidence is without merit. They rely on precedent directing that "[t]o prove a lost instrument the one proposing to establish it must show its execution, its delivery and its contents"[9] by that standard. The clear, cogent and convincing standard, however, applies to the contents of lost documents, not copies.[10] Here, although the original is lost, under the Best Evidence Rule the photocopy is admissible "to the same extent as an original" unless it is of questionable authenticity or it would be unfair to admit it.[11] Thus, once a valid photocopy is admitted, its terms are established.
We next address whether Braut is entitled to attorney fees based on the collateral agreement's provision that the holder of the note is entitled to attorney fees if an action is undertaken to collect on the note. A prevailing party may recover attorney fees only if authorized by a private agreement, by statute, or by a recognized ground in equity.[12] In Watkins v. Restorative Care Center, Inc.,[13] this court held that a purchase and sale agreement providing that either party may recover attorney fees from the other if that party prevails in an action arising out of or relating to the agreement cannot be enforced against nonparties, or "strangers to the agreement."[14] The Wierzbickis rely on Watkins to argue that because they did not negotiate the original agreement, they cannot be held to its terms. This is correct. The collateral agreement in this case provides that if the note "is placed in the hands of an attorney for collection" Tarabochia is liable for fees and costs "in which the suit or action, including any appeal therein, is tried, heard or decided." This language does not establish that the parties contemplated requiring a party to the agreement who is not a party to the litigation to pay fees. Tarabochia chose not to appeal the trial court's ruling, so he is not liable for fees on appeal.
Finally, we deny Braut's request for terms and compensatory damages as untimely and unsubstantiated. First, although we find no abuse of discretion on these facts, the issue was certainly not settled and the appeal is not frivolous. And second, despite the clear requirement in RAP 17.4(a) that motions are to be filed "at least 10 days" before the hearing date, Braut served his motion on the Wierzbickis seven days before oral argument, requiring the Wierzbickis' attorney to draft a response to this meritless motion over a holiday weekend. For that reason, we grant the Wierzbickis' request for attorney fees for time expended in responding to this motion.
Affirmed.
WEBSTER, J., and BECKER, J., concur.
NOTES
[1] This document established a 12 percent interest rate compounded semi-annually, and provided for a lump sum payoff on July 29, 1994.
[2] Initially, the trial court granted the Wierzbickis' and Washington Federal's motion for summary judgment on the ground that Inseafuture could not bring the lawsuit because it had been administratively dissolved in 1983. Braut appealed, and in a March 1999 opinion, this court held that Braut could pursue this claim on Inseafuture's behalf and remanded to the trial court for further proceedings. Inseafuture, Inc. v. Tarabochia, No. 42281-2-I (Wash.Ct.App. March 8, 1999).
[3] Braut contends on appeal that "[n]either Tarabochia nor the appellants specifically denied the authenticity of Arthur Tarabochia's signature" on the note. This is patently untrue. As the Wierzbickis point out in their reply brief, Braut's counsel acknowledged at trial his understanding that "the signatures have specifically been denied."
[4] It also entered an order staying execution of the judgment pending appeal and ordered that a bond was not required. That order was affirmed by a commissioner.
[5] The decision to admit or exclude photocopies is left to the sound discretion of the trial court. State v. Elmore, 139 Wash.2d 250, 285, 985 P.2d 289 (1999), cert. denied, ___ U.S. ___, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000).
[6] 5C Karl B. Tegland, Washington Practice: Evidence § 1003.4, at 252-53 (4th ed.1999).
[7] 956 F.2d 1534 (10th Cir.), cert. denied, 506 U.S. 828, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992).
[8] Id. at 1545 (quoting 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 1003[02], at 1003-9 (1991)).
[9] Deglow v. Smith, 77 Wash.2d 128, 129, 459 P.2d 786 (1969).
[10] Dahlgren v. Blomeen, 49 Wash.2d 47, 52, 298 P.2d 479 (1956) (citing cases requiring "clear and positive" evidence of contents of lost documents and noting that "in none of them was a copy of the instrument produced in court"). See also Lutz v. Gatlin, 22 Wash.App. 424, 590 P.2d 359, review denied, 92 Wash.2d 1007 (1979).
[11] ER 1003.
[12] State v. Keeney, 112 Wash.2d 140, 142, 769 P.2d 295 (1989).
[13] 66 Wash.App. 178, 195, 831 P.2d 1085, review denied, 120 Wash.2d 1007, 841 P.2d 47 (1992).
[14] Id.