# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NOTE HOLD TWO, LLC, a Wyoming limited liability company, | No. 88309-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| UNICO INVESTMENT GROUP LLC, a Delaware limited liability company, | |
| Respondent. | |

FELDMAN, J. — Note Hold Two, LLC (NHT) appeals a summary judgment order dismissing its breach of contract and declaration judgment action against Unico Investment Group LLC. NHT alleges Unico failed to make a scheduled payment under a promissory note, while Unico argues the note's subordination provision relieved it of its obligation to make that payment. We agree with Unico and affirm.

I

Jonas Sylvester was an employee of Unico—a national real estate and investment group—from 2003 until 2020 and served as Unico's president for a portion of that time. As an employee, Sylvester received 38,096.8 units in Class B equity interests through a Common Class B Unit Grant Agreement. When Sylvester left Unico, he entered into a Common Class B Unit Purchase Agreement

with Unico. Pursuant to this agreement, Unico would purchase Sylvester's Class B equity interests for $2,805,161.38 via two promissory notes.

Only the first promissory note, in the amount of $2,244,129.10, is at issue here. Under the terms of the note, Unico was to make scheduled principal and interest payments to Sylvester in an amount equal to $336,619.37 on March 11, 2023 and March 11, 2024. The unpaid principal balance and all unpaid accrued interest matured and would become due and payable on March 11, 2025. Critical here, the note included a provision, discussed more fully in section II.A below, expressly subordinating Sylvester's right of payment under the note to all existing and future obligations to Unico's senior lender.[1]

Washington Trust Bank (WTB) was Unico's senior lender. Unico had previously entered into a loan agreement with WTB on December 23, 2016 for $40,000,000.00. In this agreement, Unico agreed that it would not, without WTB's prior written consent, "[m]ake distributions . . . or . . . payments to [Unico]'s equity holders . . . if an Event of Default has occurred or such distribution or payments would cause an Event of Default to occur."

Beginning in 2023, Unico and WTB began to discuss amending the agreement because of Unico's financial status after years of deterioration following the COVID 19 pandemic. On March 6, 2024, counsel for WTB messaged Unico, stating that under their existing loan agreement, "Unico has advised WTB that

---

[1] The underlying grant agreement, referenced in the text above, authorizes and requires such a subordination provision as follows: "Notwithstanding the foregoing [payment terms for the promissory note], if [Unico] delivers a promissory note as full or partial payment for Interests repurchased by [Unico], such note shall be subordinated in right of payment to all existing and future obligations of [Unico] to its senior lender(s)."

certain scheduled payments . . . to Borrower's equity holders will, in fact, cause Unico to violate one or more of its financial covenants" and thus "such payments are impermissible and prohibited under the Loan Agreement." Soon thereafter, on March 14, 2024, Unico and WTB modified their existing loan agreement to prohibit Unico, without prior written permission from WTB, from making *any* payment to holders of Common Class B Notes (a) prior to July 31, 2025 or (b) on or after July 31, 2025 and before August 2026 unless Unico met certain financial requirements detailed in the agreement.[2]

In accordance with the foregoing provision, Unico did not make its scheduled payment under the promissory note on March 11, 2024. Instead, it notified Sylvester on March 15, 2024 that it would not be making the March 2024 payment any earlier than August 1, 2025 pursuant to the subordination provision in the promissory note and the amended WTB senior loan agreement. Unico then paid the accruing interest in kind by adding it to the outstanding principal amount.

After receiving this notice, Sylvester assigned his rights in the promissory note to NHT, which in turn filed a complaint against Unico for breach of contract and declaratory relief. Both Unico and NHT moved for summary judgment, which the trial court granted in favor of Unico. The court concluded the plain language of the promissory note provided for this exact situation where the "senior debt holder (Washington Trust Bank) precluded payment on the subordinate note and the accrued interest was added to the principal amount due and owing." Thus, Sylvester "entered this contract with these terms and the inherent risk of

---

[2] NHT concedes in its reply brief "that Washington Trust could prohibit cash payments, and by the 2024 amendment, did prohibit Unico from making cash payments to the Series B noteholders."

nonpayment as scheduled." After denying NHT's motion for reconsideration, the trial court awarded Unico its attorney fees and costs pursuant to the promissory note's Costs and Expenses provision. This timely appeal followed.

II

A. Breach of contract claim

NHT argues the trial court erred in granting summary judgment in favor of Unico on its breach of contract claim. We disagree.

We review a trial court's summary judgment rulings de novo. *David v. Freedom Vans LLC*, 4 Wn.3d 242, 248, 562 P.3d 351 (2025). We undertake the same inquiry as the trial court and consider the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party. *State v. City of Sunnyside*, 3 Wn.3d 279, 296, 550 P.3d 31 (2024). Summary judgment is appropriate where there is "no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Horvath v. DBIA Services*, __ Wn.3d __, 580 P.3d 969, 975 (2025); CR 56(c).

The court's primary objective in contract interpretation is to ascertain the parties' intent at the time they executed the contract. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013). Washington follows the objective manifestation theory of contract interpretation, which looks to the reasonable meaning of the contract language— rather than the unexpressed subjective intent of the parties—to determine the parties' intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). We give words in a contract their "ordinary, usual, and popular meaning unless the entirety

No. 88309-7-I

of the agreement clearly demonstrates a contrary intent," and we "do not interpret what was intended to be written but what was written." *Id.* at 504. Additionally, we view the contract as a whole and interpret particular language in the context of other contract provisions. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014) (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000)).

Here, two provisions in the promissory note are critically important. First, section 3 of the promissory note states:

> [Unico] shall make a payment to [Sylvester] on March 11, 2023 and March 11, 2024, each in an amount equal to $336,619.37, plus all accrued but unpaid interest.[3]

Second, section 12, the subordination provision, provides in relevant part as follows:

> Notwithstanding any provision to the contrary in this Note, all payments, whether principal, interest or otherwise, required under this Note shall not be paid in cash unless and until permitted under the terms of the Senior Debt Documents, and any interest accruing under this Note which is not paid in cash when due as a result of the foregoing shall be payable in kind, and deemed paid when due, by adding such amount to the outstanding principal amount of this Note.

Although the parties also cite an earlier portion of section 12, Unico expressly relies on the above-quoted portion in support of its argument that it did not default under the promissory note when it failed to make the March 11, 2024 payment.

Viewing the foregoing provisions as a whole and in context of the entire contract, the trial court did not err in granting summary judgment in favor of Unico on NHT's breach of contract claim. Pursuant to section 12, as quoted above, WTB

---

[3] While the promissory note refers to "Maker" and "Holder," we refer to "Maker" as "Unico" and "Holder" as "Sylvester" (in brackets) for ease of reference and in accordance with the note.

- 5 -

could, and did, prohibit Unico from making the scheduled cash payments of principal due under the promissory note. NHT does not dispute this. *See supra* at n.2. The promissory note also states that the agreed remedy for such a situation (when WTB prohibited payment under the note) was that any interest accruing but not paid in cash shall be "payable in kind . . . by adding such amount to the outstanding principal." That is precisely what Unico did. Thus, no default regarding the March 11, 2024 payment occurred under section 6 of the promissory note.[4]

Despite this, NHT points to specific language in section 3 and section 12 that it claims shows that Unico should have made principal payments "in kind" via alternative means other than cash, such as transfers of additional equity or real estate conveyances. This argument fails, at the outset, because the plain language of section 3—which requires Unico to pay Sylvester "$336,619.37"— shows that the parties intended the note be paid in cash. Contrary to NHT's assertion, this interpretation does not render the phrase "each in an amount equal to" superfluous because that phrase demonstrates the parties' intent that Unico make a separate $336,619.37 cash payment in both March 2023 and March 2024. Nor does the plain language of section 12 support NHT's argument regarding "in kind" principal payments. While Unico was required to make "in kind" payments of accrued interest if it failed to make its scheduled principal payments, the note does not require Unico to make "in kind" payments of principal. The only mention of "in

---

[4] Section 6 of the promissory note states in relevant part, "The following shall constitute an "**Event of Default**" under this Note: (a) [Unico] fails to make any payment required pursuant to this Note and such failure is not cured within ten (10) days after notice thereof by [Sylvester] to [Unico] . . . ." As discussed in the text, there was no such failure to make a required payment here.

kind" payments refers to Unico's action of adding the accrued interest to the outstanding principal. Thus, neither section 3 nor section 12 support NHT's argument that Unico defaulted by failing to make non-cash ("in kind") payments of principal on March 11, 2024.

NHT also relies on *Lutz v. Gatlin*, 22 Wn. App. 424, 590 P.2d 359 (1979), to support this argument. There, Lutz loaned Design Specialties, Inc. $4,000 and received a promissory note. *Id.* at 426. When Design failed to pay Lutz under the note, Lutz agreed to surrender the note in exchange for a five percent equity interest in Centaur Inn with the option, at the end of 90 days, to retain the equity interest or return it and receive $4,000. *Id.* When Lutz never received the equity interest, he withdrew his offer and sued for the balance under the note, which the trial court awarded. *Id.* On appeal, Gatlin, who was a guarantor on the note, argued the trial court erred in reinstating the note when Design failed to transfer the equity interest because Lutz's agreement to surrender the note in exchange for the equity interest discharged the note. *Id.* at 431-32.

The court of appeals disagreed, concluding that while "an instrument, to be negotiable, must be payable in money," there was nothing in the applicable provisions of the Uniform Commercial Code, Title 62A RCW, to prevent the holder of a promissory note from accepting payment in some form other than money. *Lutz*, 22 Wn. App. at 432. And because Lutz had agreed to take a five percent equity interest in the inn but never received it, there was no payment to the holder of the note and thus no discharge of liability on the note. *Id.* Here, by contrast, there was no agreement by the parties to exchange Unico's obligation to make a

cash payment of $336,619.37 for an obligation to make a non-cash payment equaling $336,619.37. While nothing would prevent NHT from accepting a non-cash payment from Unico instead of the scheduled cash payment, *Lutz* does not create an obligation that Unico make such a non-cash payment on March 11, 2024. Thus, *Lutz* is inapposite.[5]

In sum, the trial court did not err in granting summary judgment in favor of Unico on its breach of contract claim.[6]

B.     Declaratory judgment action

NHT argues the trial court erred in dismissing with prejudice its declaratory judgment action because several issues remain unresolved and the parties are left without guidance as to their rights under the promissory note. Relatedly, NHT argues that the declaratory judgment action should be remanded to the trial court. We disagree.

---

[5] Much the same is true of *Martin v. Clinton*, 67 Wn.2d 608, 408 P.2d 895 (1965), which NHT similarly relies on for this argument. There, Martin loaned Clinton $4,500 in exchange for a promissory note. *Id.* at 608. Subsequently, the parties orally agreed that Martin would take over Clinton's stock in full and complete satisfaction of the note. *Id.* at 609. The court found such an agreement existed and Martin took over Clinton's stock in satisfaction of the note. *Id.* As with *Lutz*, *Martin* does not create an obligation that Unico transfer stock or other non-cash assets to NHT. Thus, *Martin* is also inapposite.

[6] NHT also seeks to raise three arguments that are not properly before us. First, NHT argues the trial court's summary judgment ruling eliminated the parties' installment payment schedule, thus rendering the note payable on demand. This argument is not properly before us because NHT raises it for the first time on appeal. *See* RAP 2.5(a). Second, NHT argues the trial court could not properly grant summary judgment in this case because the note's terms are ambiguous. NHT failed to make this argument below; instead, it only raised ambiguity as an alternative argument in its motion for reconsideration. Also, as discussed in the text above, the note has only one reasonable meaning when read as a whole and in the context of all the provisions. Third, NHT argues, in its reply brief and for the first time on appeal, that Unico should be equitably estopped from asserting it could make only cash payments because it drafted the promissory note and included an in kind payment provision. This argument does not support NHT's position that the trial court erred in granting summary judgment. Moreover, we do not address arguments raised for the first time in a reply brief. *Budd v. Kaiser Gypsum Co.,* 21 Wn. App. 2d 56, 71 n.11, 505 P.3d 120 (2022). Because they are not properly before us, we decline to further consider these arguments.

Courts have the power to "declare rights, status and other legal relations" by declaratory judgment under the Uniform Declaratory Judgments Act (UDJA). RCW 7.24.010; *Lewis County v. State*, 178 Wn. App. 431, 436, 315 P.3d 550 (2013). As the court explained in *Washington Federation of State Employees v. State*, 2 Wn.3d 1, 21-22, 534 P.3d 320 (2023), our review of a court's decision regarding a request for declaratory relief generally occurs in two situations. "First, appellate courts can determine whether a trial court erroneously exercised its discretion in considering or refusing to consider an action." *Id.* at 22. "Second, where a court decides the declaratory judgment action on its merits, an appellate court may review the propriety of the lower court's decision to grant or deny declaratory relief." *Id.*

Here, the trial court did not err in dismissing with prejudice NHT's declaratory judgment action. In its complaint, NHT sought declaratory relief and a judgment "ordering that NHT is entitled to liquidate the debt under the Note to a judgment [that] may be paid through statutory post-judgment remedies once the judgment is entered." In other words, NHT sought a declaration from the trial court that because Unico defaulted under the note, NHT was entitled to liquidate the debt by obtaining liens on Unico's real property and executing the judgment against Unico's assets. But such a declaration was not warranted because Unico did not default under the note. The trial court fully resolved all issues regarding the March 11, 2024 payment by entering summary judgment in favor of Unico. As the trial court did not err in granting summary judgment in favor of Unico on its

breach of contract claim, it likewise did not err by dismissing NHT's claim for declaratory relief.

Despite this, NHT argues the note does not preclude it from pursuing a declaratory judgment action to obtain a declaration that Unico is in default under the note. NHT relies on *Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund I, LLC*, 155 Wn. App. 643, 230 P.3d 625 (2010), but such reliance is misplaced. There, Freestone loaned MKA over $30 million evidenced by promissory notes. *Id.* at 651. MKA defaulted under the notes, and Freestone commenced a declaratory judgment action against MKA seeking a declaration that MKA was in default. *Id.* at 651-52. MKA opposed the action, citing a provision in the note stating that "[Freestone] will forbear any action against [MKA] for the collection or payment of the [Freestone notes]." *Id.* at 652, 669, 672.

In the trial court, MKA argued Freestone had breached the parties' agreements by bringing the declaratory judgment action against MKA. *Id.* at 671-72. The trial court disagreed, *id.* at 652, and this court affirmed, concluding nothing in the note prevented Freestone "from seeking a declaration of the uncontested conclusion that the loans are in default," *id.* at 672. By contrast here, the trial court correctly concluded that Unico was not in default under the note with regard to the March 11, 2024 payment. While NHT was not precluded under the terms of the note from seeking declaratory relief, such relief was not warranted here because no default occurred. Thus, *Freestone* is inapposite.

Next, NHT requests that this court remand the case to the trial court for a declaration of its rights regarding various questions, concerns, and potential issues

it raises including the following:  the note's new maturity date, whether the statute of limitations applies to the installment payment dates, how interest is calculated, and whether Unico defaulted by not paying the 2025 interest in-kind as required under the Note.  For a trial court to grant declaratory relief under the UDJA, there must be a justiciable controversy, which is defined as:

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Lewis County*, 178 Wn. App. at 436-37 (quoting *Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n*, 141 Wn.2d 245, 284, 4 P.3d 808 (2000)) (internal quotation marks omitted).  Alternatively, the case must present an issue of major public importance.  *Id.* at 436.

Here, no "actual, present and existing dispute" persists regarding the March 11, 2024 payment under the trial court's summary judgment ruling.  NHT's complaint only asserted claims surrounding the March 11, 2024 payment and only those specific claims were addressed by the trial court's ruling.  *See Sch. Dists.' All. for Adequate Funding of Special Educ. v. State*, 149 Wn. App. 241, 261, 202 P.3d 990 (2009) ("a court has no jurisdiction to grant relief beyond that sought in the complaint") (citing *In re Marriage of Leslie*, 112 Wn.2d 612, 617, 772 P.2d 1013 (1989)).  Because any potential claims surrounding the March 11, 2025 maturity date of the note were not before the trial court below, nor are they properly before this court on appeal, we decline to remand NHT's declaratory judgment action.

C.      Appellate attorney fees

Lastly, Unico seeks appellate attorney fees and costs under RAP 18.1 and section 9 of the promissory note.  RAP 18.1(a) allows the award of appellate attorney fees as permitted by "applicable law."  *Christiansen v. Dep't of Labor and Indus.*, 26 Wn. App. 2d 560, 573, 527 P.3d 1176 (2023).  Section 9 of the promissory note provides this applicable law.  It states that the "substantially prevailing party shall be entitled to recover from the other party all reasonable and documented costs and expenses of the action" "including reasonable and documented attorneys' fees."  Accordingly, we award appellate attorney fees and costs in favor of Unico as the substantially prevailing party subject to compliance with RAP 18.1.

Affirmed.

_____
Feldman, J.

WE CONCUR:

_____          _____
Bowman, J.                                Coburn, J.