SHANNON–VAIL FIVE INC.; Shannon–The–Greens; Shannon–Lake Elsinor Inc., Plaintiffs–Appellants,

v.

Del BUNCH, Jr.; Ernestine L. Bunch; Chicago Title Company, Defendants–Appellees.

No. 00–15444.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2001

Filed Nov. 2, 2001

Todd Gabriel, Sparber, Ferguson, Ponder & Ryan, San Diego, California, and R. Vaughn Gourley, Stephens, Gourley & By-

later, Las Vegas, Nevada, for the plaintiffs-appellants.

Michael H. Singer, Oshins, Singer, Segal & Morris, Las Vegas, Nevada, for the defendants-appellees.

Before: POLITZ,* W. FLETCHER, and FISHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Plaintiffs appeal the district court's decision that Nevada rather than California law should be applied to a claim that usurious interest rates were charged on six loans made by defendants, as well as to a conversion claim arising out of the application of a payment on one loan to an outstanding balance on another loan. Applying Nevada law, the district court found that the interest rates were permissible and that there had been no conversion.

We have jurisdiction under 28 U.S.C. § 1291 and affirm the district court on both issues.

I

Plaintiffs are three California corporations-Shannon/Vail Five, Shannon/The Greens, and Shannon/Lake Elsinore-organized and owned by Thomas P. Dobron, a real estate developer residing in Nevada. From 1993 to 1995, Dobron, acting on behalf of the Shannon companies, entered into six loan agreements for substantial sums with defendants Del Bunch, Jr. and Ernestine L. Bunch, Nevada citizens, to fund new real estate development projects in California. The loans carried a 15% per annum interest rate plus 10% paid up front. According to plaintiffs, this resulted in effective interest rates ranging from 27.12% to 31.61%. The loans were secured by trust deeds for real property located in California. The loans were also personally guaranteed by Dobron; the guarantees expressly provided that Nevada law governed the terms of the guarantees. None of the promissory notes contained any choice-of-law clauses, but each note recited that the loan was to be repaid in Nevada.

In November 1995, Shannon/Vail Five overpaid Bunch $52,000 on one of the loans. Instead of refunding the money, defendants, over Dobron's objection, applied the funds to the outstanding balance on a loan to Shannon/Lake Elsinore.

In March 1996, plaintiffs filed a complaint in California state court containing a usury claim for all six loans, as well as a conversion claim for the $52,000 overpayment. The case was removed to federal district court in the Southern District of California under 28 U.S.C. § 1446, and was then transferred to the District Court of Nevada under 28 U.S.C. § 1404(a).

Nevada has no usury statute, but California prohibits interest rates in excess of 10%. See Cal. Const. art. XV, § 1. The Nevada district court applied the Restatement (Second) of Conflict of Laws (1971) ("Restatement") to determine whether Nevada or California law should apply to the usury claim. Specifically, the district court applied Restatement § 195, under which it found that Nevada law applies.[1]

---

* Honorable Henry A. Politz, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1. Alternatively, the district court held that even if California law did apply, the loan transactions fell within the Cal. Civ.Code § 1916.1 exception to the restriction on interest rates for loans made through licensed real estate brokers, and thus the transactions were still not usurious. We need not reach the question of whether this exception applies under California law because we find that Nevada law applies.

The court also concluded that California did not have a more significant relationship to the contract than Nevada under the principles stated in § 6(b) of the Restatement.

In a later order, the district court applied Nevada law to the conversion claim, and found that there had been no conversion.

## II

■ We review a district court's conclusions of state law *de novo*. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). This appeal involves issues of conflict of laws. We must select the correct choice-of-law rule, a pure legal question, and then apply that rule to the facts of this case, a mixed question of law and fact. Since the relevant facts are largely undisputed, we are making primarily legal determinations, and *de novo* review is thus appropriate. *See Tolbert v. Page*, 182 F.3d 677, 682 (9th Cir.1999).

■■ A federal district court must apply the state law that would be applied by the state court of the state in which it sits. This is true whether the basis for subject matter jurisdiction is diversity of citizenship under 28 U.S.C. § 1332 or federal question under 28 U.S.C. § 1331. *See Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n. 2 (9th Cir.2000); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 541 n. 1 (2d Cir.1956). After a transfer pursuant to 28 U.S.C. § 1404(a), the transferee district court generally must apply the state law that the transferor district court would have applied had the case not been transferred. *See Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."). Since the transferor district court was in California,

the Nevada district court was required to apply the law that a California state court would have applied, including the conflicts law of California. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

### A. Plaintiffs' Usury Claim

■ To evaluate plaintiffs' claim that the rate of interest charged under the loan contracts is illegal because it is usurious under California law, we must determine whether California law applies. To determine the law governing a contract, California courts look to the relevant statute and, for further guidance, to the choice-of-law principles outlined in the Restatement. *Henderson v. Superior Court*, 77 Cal. App.3d 583, 592, 142 Cal.Rptr. 478 (Cal.Ct. App.1978).

■ California Civil Code § 1646 states the traditional conflicts rule that, for matters pertaining to performance, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." In this case, the loan funds were disbursed from Nevada and repayment was required in Nevada. Since Nevada is thus the place of performance of the loan contract, § 1646 appears to require that Nevada law be applied.

For a more particularized and nuanced analysis that ultimately reaches the same result, we turn to the Restatement. The parties argue over which of four possible sections of the Restatement apply. We discuss each of the sections in succession.

#### 1. Section 187

Section 187 of the Restatement provides that the "law of the state chosen by the parties" will govern. Parties can indicate this choice either through an express

provision in the contract or by reference to legal doctrines that are peculiar to the law of a particular state and that thereby indicate the parties' preferred choice of law. Restatement § 187, cmt. a.

■ Defendants argue that the choice-of-law provision from Dobron's personal guarantees on plaintiffs' loan obligations should be integrated into the promissory notes of the plaintiff corporations. The relevant clause in the guarantees states: "*This Guarantee* shall be governed by and construed in accordance with the law of the state of Nevada" (emphasis added). However, the limiting language ("This Guarantee") of the clause reveals that the choice-of-law clause was intended to apply only to the guarantee itself. Moreover, by definition, a guarantee is a separate undertaking in which the principal obligor does not join, and a guarantee exists independent of the original obligations between the principal obligor and the obligee. This understanding is expressly reflected in the language of Dobron's guarantees: "Guarantor acknowledges that its obligations hereunder are independent of the obligations of the Borrower." Because none of the requisite choice-of-law indications are found in the promissory notes themselves, § 187 is inapplicable in this case.

### 2. Section 188

Absent a clear agreement between the parties as to the governing law, Restatement § 188 is the general provision under which choice of law is determined for a contract. Section 188 provides that the local law of the state which, with respect to the disputed issue, "has the most signifi-

cant relationship to the transaction and the parties" is the applicable law, and it lists five factors to guide this determination.[2] Immediately following § 188 are sections providing more specific criteria for particular types of contracts. *See* Restatement §§ 189–197. The Restatement contemplates that these subsequent sections will be used to decide choice of law in such contracts. *See* Restatement, "Introductory Note," Ch. 8, Title B, at 586 ("These contracts are given special attention because it is considered possible to state with respect to each that, in the absence of an effective choice of law by the parties, a particular contact plays an especially important role in the determination of the state of the applicable law.").

### 3. Section 195

Section 195 specifically addresses "Contracts for the Repayment of Money Lent." Under § 195, the basic rule is that the law of the state in which the money is to be repaid governs: "The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made...." Restatement § 195. The basic rule covers laws governing the interest rate at which the money is to be repaid, including usury laws: "The local law of the state selected by application of the present rule governs such issues as the debtor's right to repay the loan before it matures, the creditor's right to proceed against the debtor without having exhausted his security, the time when the

---

**2.** According to Restatement § 188(2):

[T]he contacts to be taken into account ... to determine the law applicable to an issue include:

(a) the place of contracting;
(b) the place of negotiation of the contract;
(c) the place of performance;

(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

loan is to be repaid and *the rate of interest that must be paid on the loan* in the absence of a stipulation on the point in the contract." Restatement § 195, cmt. a (emphasis added). The comments also explain that there is a safety valve, or saving provision, contained in Restatement § 203 in the event that the usury law applied by virtue of this basic rule invalidates the contract: "[A] contract invalid on the ground of usury under the local law of the state where the loan is to be repaid may nevertheless be upheld by application of the local law of another state with which it has a substantial relationship (see § 203)." *Id.* In this case, the contract provides that the money is to be repaid in Nevada. Therefore, the law of Nevada-including usury provisions, if any-governs under the basic rule of § 195.

Plaintiffs rely on the second clause in § 195, which states that the local law of the state where the loan is to be repaid applies "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." Restatement § 195. Before determining the applicability of this clause, it will be helpful to take a step back and determine its role in the Restatement's overall scheme for usury issues.

█ In light of the saving provision in § 203, the "unless" clause of § 195 should not be read as designed to *save* contracts that violate usury laws of the state of repayment, because § 203 already serves that very function. *See infra* Part II.A.4. Rather, the clause could be used to *invali-date* contracts with interest rates permitted under the law of the state of repayment if another state with more stringent usury laws is found to have "a more significant relationship" to the issue than the state of repayment. However, in order to promote the predictability sought by § 195, *see* cmt. b, as well as to protect the justified expectations of the contracting parties, the "unless" clause should not ordinarily override the strong presumption of choice of law created by the chosen place of repayment. Comment b to § 195 explains that "it can often be assumed that the parties, to the extent they thought about the matter at all, would expect that the local law of the state where repayment is to be made would be applied to determine many of the issues arising under the contract." Accordingly, in a usury case, a court has endorsed applying the law of the state of repayment as long as "the place of performance bears a reasonable relationship to the promissory note and the parties." *Finance America Corp. v. Moyler,* 494 A.2d 926, 930 (D.C.1985).

In usury cases, the invalidating power of the "unless" clause of § 195 should thus be limited to situations where the location of repayment is selected solely to circumvent a state's usury laws, or when the place of repayment otherwise has a very tangential relationship to the contract. For example, where both the borrower and lender are domiciled in State X, all negotiations and contracting for the loan occur in State X, and the intended use of the loan is in State X, but the contract provides for repayment in State Y to avoid State X's more stringent usury laws, State X has "a more significant relationship" worthy of protection under the "unless" clause.[3] This is

---

3. For particular issues unrelated to repayment of the loan, such as capacity to contract, or to save a contract from invalidation, a more generous application of the "more significant interest" clause of § 195 may be appropriate. *See* Restatement § 195, cmt. c & illus. 1 (providing example where state with restrictions on contracting by minors had "more substantial interest" and thus trumped local law of state of repayment given that both parties were domiciled and contract was made in state with the age restriction).

not a case where the parties and the contract had strong connections to California yet the parties structured the contract to evade California's usury law. Defendants Del and Ernestine Bunch, the lenders, are citizens of Nevada, as is Dobron, who negotiated the loans on behalf of the plaintiff corporations he owns. Furthermore, while the parties dispute where the loans were negotiated, the performance of the contract (funding and repayment of loans) was in Nevada.

If the foregoing were not the meaning of the "unless" clause, the bright-line rule of § 195 based on the place of repayment would become blurred, and we would risk defaulting to the general and somewhat indeterminate principles of § 188. This was precisely the result the Restatement sought to avoid by drafting § 195 and the other sections giving specific rules for particular types of contracts.

■ Plaintiffs nonetheless urge that the "unless" clause of § 195 trumps application of Nevada law in this case because California has a usury statute and Nevada has none. Nevada affirmatively repealed its usury law in 1981. Nev.Rev.Stat. § 99.050 (1981) (removing 18% per annum cap on interest rate for payment of money due under any contract). But the lack of a usury law does not mean that Nevada has a less substantial concern than California about interest rates; rather, it appears to reflect a choice to favor individual contract decisions and the free flow of capital. *Cf.* Cindy T. Beal, *Recent Changes in the Texas Usury Statutes–Do They Affect Common Law Usury Claims?*, 3 Tex. Wesleyan L.Rev. 421, 425 (1997) ("Proponents of free enterprise ... contended that although interest rate restrictions were intended to aid the poor in obtaining loans, the restrictions effectively created a shortage of capital. Furthermore, they argued, because the source of credit was diminishing, the interest rate restrictions actually

operated to exclude the poor from obtaining loans.") We therefore do not believe that the absence of a usury statute in Nevada means that California has "a more substantial relationship" to the dispute, such that the basic rule of § 195 applying the law of the place of repayment should be overridden.

Given the ample connections to Nevada in this case, of which the foremost is the obligation to repay the loan in that state, we agree with the district court's conclusion that § 195 dictates that Nevada law must apply, and that plaintiffs' usury claims fail because Nevada has no usury law.

*4. The safety valve, or saving provision, of § 203*

■ Because the application of § 195 ends the case by allowing the rate of interest charged, we do not need to resort to § 203. But because plaintiffs vigorously argue that § 203 requires the application of California law, we explain our view of § 203.

Section 203 provides:

> The validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188.

Restatement § 203. If the local law applicable under § 195 forbids the rate of interest charged as usurious, then § 203 provides a safety valve, thereby upholding the contract in certain cases. This reading of § 203 as a saving provision is supported by its stated rationale:

> Upholding a contract against the charge of usury by the application of the local law of one state, which has a substantial

relationship to the transaction and the parties, can hardly affect adversely the interest of another state when the stipulated interest is only a few percentage points higher than would be permitted by the local law of the other state. Under these circumstances, the courts deem it more important to sustain the validity of a contract, and thus to protect the expectations of the parties, than to apply the usury law of any particular state.

Restatement § 203, cmt. b.

Under § 203, a rate that would be usurious under the law of the state with *the most* substantial relationship may nevertheless be charged if (a) there is another state with "*a substantial relationship*" (emphasis added) that allows the higher rate of interest, and (b) the interest rate is "not greatly in excess" of the rate allowed by the law of the state with *the most* substantial relationship. Although § 203 refers to the state with the most substantial relationship as "the state of the otherwise applicable law under the rule of § 188," the reference to the general rule of § 188 appears to incorporate the more particularized provisions of § 195. This interpretation of the reference to § 188 is supported by Introductory Note to Title B, quoted above, which explains that the sections following § 188 provide precise rules, based on the general principles of § 188, for determining choice of law for particular types of contracts. It is also supported by

a cross reference from § 195 to § 203 in comment a to § 195,[4] and by a cross reference from § 203 to § 195 in Illustration 3 to § 203.[5]

Under this reading of § 203, Nevada is the state with the most significant relationship to the contract under § 195, and is therefore "the state of the otherwise applicable law" under § 203 and § 195. Since Nevada has no usury statute, the rate of interest on the loans is permitted under Nevada law. And since the saving provision of § 203 is necessary only when the law of "the state of the otherwise applicable law" invalidates the interest rate, § 203 is inapposite.

### B. Plaintiffs' Conversion Claim

■ Plaintiffs contend that the district court should have applied California law instead of Nevada law to their conversion claim. For tort claims in general, California follows the "governmental interest analysis" set forth in *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), as well as Restatement principles. *See* B.E. Witkin, 5 Summary of California Law, Torts §§ 330–331 (9th ed.1988). Witkin cites Restatement § 147 as the California conflicts rule for injuries to property. *Id.* at § 336. Under Restatement § 147, "the local law of the state where the injury occurred determines the rights and liabilities of the parties...." We understand this to mean that the local law of the state in which the alleged conversion oc-

---

4. "On the other hand, a contract invalid on the ground of usury under the local law of the state where the loan is to be repaid may nevertheless be upheld by application of the local law of another state with which it has a substantial relationship (*see § 203*)." Restatement § 195 cmt. a (emphasis added).

5. "In state X, A lends B a sum of money and receives in return a note calling for the payment of 8 per cent interest. A is domiciled in state Y and the note is payable there. B, on

the other hand, is domiciled in X, the borrowed money is to be used in that state and the negotiations leading up to the loan took place there. In Y, the maximum legal rate of interest is 6 per cent, and, *under the rules of §§ 188 and 195,* Y is the state of the otherwise applicable law. X, however, permits the charging of 8 per cent interest. The validity of the note will be sustained against the charge of usury by application of the X usury statute." Restatement § 203 cmt. c, illus. 3 (emphasis added).

curred is the controlling law. *See* Restatement § 147, cmt. i.

The "governmental interest analysis" considers "the interests of the litigants and involved states." *Reich,* 67 Cal.2d at 553, 63 Cal.Rptr. 31, 432 P.2d 727. Under this test, the situs of the allegedly wrongful act remains a relevant, and often the predominant, consideration. *Hernandez v. Burger,* 102 Cal.App.3d 795, 801–02, 162 Cal. Rptr. 564 (Cal.Ct.App.1980). Thus, *Reich*'s approach would not alter the result obtained under § 147 unless another state has an overriding legitimate interest. *See id.*

Here both sides concede that the alleged misallocation of the $52,000 overpayment took place in Nevada. In addition, the defendants are Nevada citizens and conduct their business in Nevada, strengthening Nevada's interest in the conversion claim. Hence, the district court was correct to apply Nevada law. Plaintiffs have not contested the district court's conclusion that their conversion claim fails under Nevada law.

AFFIRMED.