230 P.3d 625 (2010)
FREESTONE CAPITAL PARTNERS L.P.; Freestone Low Volatility Partners L.P.; Freestone Capital Qualified Partners L.P.; and Freestone Low Volatility Qualified Partners L.P., Respondents,
v.
MKA REAL ESTATE OPPORTUNITY FUND I, LLC, a California limited liability company; MKA Capital Group Advisors, LLC, a California limited liability company, Michael A. Abraham, an individual; and Jason Sugarman, an individual, Appellants.
No. 63321-0-I.
Court of Appeals of Washington, Division 1.
April 26, 2010.
*628 Christopher H. Howard, Averil B. Rothrock, Schwabe Williamson & Wyatt PC, Seattle, WA, for Appellants.
Bradley Fisher, Ragan L. Powers, Davis Wright Tremaine LLP, Seattle, WA, for Respondents.

PUBLISHED IN PART
COX, J.
¶ 1 This declaratory judgment action arises from approximately $30 million in delinquent loans made by a group of affiliated Seattle-based limited partnerships. They include Freestone Low Volatility Qualified Partners L.P., Freestone Capital Qualified Partners L.P., Freestone Low Volatility Partners L.P., and Freestone Capital Partners L.P. (collectively, "Freestone"). MKA Real Estate Opportunity Fund I, LLC, the borrower, is a California-based real estate investment company ("MKA"). MKA Capital Group Advisors, LLC, is the California-based manager of MKA ("MKA Advisors"). Michael Abraham and Jason Sugarman are the guarantors of the delinquent loans by Freestone to MKA (collectively, "the Guarantors").
¶ 2 The Guarantors purposely availed themselves of the privilege of transacting business in the state of Washington. This action arises in part from their guarantees of loans made by Washington entities. Assertion of personal jurisdiction over the Guarantors under this state's long-arm statute does not offend traditional notions of fair play and substantial justice. There is personal jurisdiction in Washington over the Guarantors.
¶ 3 Gottex Fund Management Ltd, the Administrative Agent for the holders of senior debt under a Subordination Agreement dated February 20, 2007, among Gottex, MKA, and Freestone, is not a necessary party to this declaratory judgment action. Likewise, joinder of Gottex was not required under CR 19. The trial court had subject matter jurisdiction to decide this case.
¶ 4 The trial court properly dismissed MKA's breach of contract claim because Freestone's actions did not constitute a violation of the terms of the Subordination Agreement.
¶ 5 There is no choice of law provision in any of the guarantees of payment that the Guarantors signed. The other documents on which Freestone relies to show there was an effective choice of Washington law by the Guarantors concerning their guarantees do not support that argument. Thus, it was incorrect for the trial court to apply Washington law based on the conclusion that there was an effective choice of Washington law governing the guarantees. Remand is necessary for the trial court to reconsider whether the laws of Washington or those of California govern the guarantees.
*629 ¶ 6 We affirm in part, reverse in part, and remand for further proceedings.
¶ 7 MKA is a California company that provides capital to residential and commercial real estate developers. MKA is managed by MKA Advisors. The Guarantors each own a 50 percent interest in MKA Advisors.
¶ 8 In 2004, MKA began borrowing large sums of money from Freestone. The face amounts of the loans totaled over $30 million between 2004 and 2008. These loans were evidenced by promissory notes executed by MKA. Either Abraham, or Abraham and Sugarman, personally guaranteed each of the MKA notes.
¶ 9 The dates, face amounts, and guarantor(s) of the notes that evidence the loans are as follows:

 Date Amount Guarantor/s
May 8, 2006 $ 8,100,000 Abraham
May 8, 2006 $10,700,000 Abraham
October 30, 2006 $ 1,000,000 Abraham
October 30, 2006 $ 2,000,000 Abraham
October 30, 2006 $ 2,000,000 Abraham
February 1, 2007 $ 2,000,000 Abraham
April 2, 2007 $ 1,000,000 Abraham, Sugarman
April 2, 2007 $ 1,000,000 Abraham, Sugarman
April 2, 2007 $ 3,000,000 Abraham, Sugarman

¶ 10 In early 2007, Gottex, MKA, and Freestone executed a subordination agreement. We will discuss this agreement more fully later in this opinion.
¶ 11 Beginning in February 2008, Freestone, MKA, and the Guarantors executed a series of note extension agreements and amendments, extending the maturity dates of the MKA loans through May 31, 2008. MKA failed to pay the loans at maturity.
¶ 12 In September 2008, Freestone commenced this declaratory judgment action against MKA, MKA Advisors, and the Guarantors, seeking a declaration that MKA was in default, money damages against the Guarantors, attorney fees, and other relief. During the extensive motion practice that followed, the trial court made a series of decisions, culminating in the entry of summary judgment in favor of Freestone. Thereafter, the court entered judgments in favor of Freestone. These judgments included awards of attorney fees against the Guarantors.
¶ 13 MKA and the Guarantors appeal.

PERSONAL JURISDICTION
¶ 14 The Guarantors argue that the trial court erred in denying their motion to dismiss for lack of personal jurisdiction. We disagree.
¶ 15 Washington's long-arm statute provides for personal jurisdiction over nonresident defendants in the following instances:
(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
(a) The transaction of any business within this state.[1]
The statute reflects a "legislative intent to assert personal jurisdiction over a foreign [defendant] to the full extent permitted by due process."[2]
¶ 16 To exercise specific personal jurisdiction over a foreign corporation under RCW 4.28.185, the following three-part test must be met:
¶ 16 (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, *630 and the basic equities of the situation.[3]
¶ 17 "It is the quality and nature of the activities which determine if the contact is sufficient, not the number of acts or mechanical standards."[4] Each case's facts must be weighed to determine whether sufficient "minimum contacts" have been shown.[5]
¶ 18 The mere existence of a contract with a Washington corporation is insufficient to establish personal jurisdiction.[6] Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, are the factors to be evaluated in determining "whether the defendant purposefully established minimum contacts within the forum [state]."[7]
¶ 19 When the trial court considers matters outside the pleadings on a motion to dismiss for lack of personal jurisdiction, we review the trial court's ruling under the de novo standard of review for summary judgment.[8] Accordingly, we review the facts, and reasonable inferences drawn from the facts, in the light most favorable to the nonmoving party.[9] For purposes of determining jurisdiction, this court treats the allegations in the complaint as established.[10] The plaintiff has the burden of establishing that jurisdiction exists and need only show a prima facie case.[11]
¶ 20 The Guarantors first argue that they did not purposefully avail themselves of the privilege of conducting business in Washington under our long-arm statute.
¶ 21 Here, there is no dispute that the Guarantors signed the written guarantees of payment. Likewise, there is no dispute that this declaratory judgment action arises from these guarantees. All of the loans evidenced by the promissory notes that MKA signed are in default. The Guarantors guaranteed payment of these delinquent obligations.
¶ 22 The guarantees were a significant inducement to Freestone agreeing to lend money to MKA. Testimony of an officer of Freestone with personal knowledge of the loan transactions makes this clear.
. . .
15. As part of the proposed lending relationship, we were told that Mr. Abraham would personally guarantee MKA Opportunity's obligations to Freestone, and we advanced funds to MKA Opportunity on that basis.
16. Over the subsequent years, the MKA Defendants requested that Freestone advance additional amounts to MKA Opportunity. We did so, but only with personal guarantees from Mr. Abraham and later Mr. Sugarman; [and] with security agreements granting the Freestone Plaintiffs a security interest in MKA Opportunities' assets.[12]
. . .
¶ 23 The Guarantors also had multiple contacts with Freestone, which is located in Washington, in their capacities as co-owners and managers of MKA Advisors. These contacts included regular correspondence by telephone, e-mail, and mail. Likewise, there was at least one visit by the Guarantors to Freestone in Washington in 2006.[13]
¶ 24 The link connecting the Guarantors to Washington may consist of affirmative acts outside of Washington in contemplation that *631 some phase of the contract will take place in Washington.[14] Although the Guarantors executed the guarantees in California, they acted in anticipation that they might become liable for MKA's debts to Freestone. Both the loans and the guarantees are payable to Freestone's Washington offices.
¶ 25 Further, it is clear that the Guarantors, as co-owners of MKA Advisors, stood to benefit personally from the loans extended to MKA by Freestone. This is made clear by Abraham's deposition testimony.
Q. How is MKA Advisors compensated for the work that it does managing MKA Opportunity?
A. We have a schedule how we're compensated. Basically, it was a profit-based incentive. In the last two years we've taken no compensation for management because of the state of the real estate market.
Q. But, in any event, there's a contractual relationship between MKA Advisors and MKA Opportunity under which MKA Advisors is paid a share of the profits of MKA Opportunity; is that correct?
A. Yes.[15]
¶ 26 We conclude that the Guarantors acted purposefully by signing in their personal capacities the guarantees of payment of MKA's debt.
¶ 27 Next, the Guarantors argue that the trial court's exercise of jurisdiction violates traditional notions of fair play and substantial justice. We again disagree.
¶ 28 For purposes of this aspect of the assertion of jurisdiction, we consider "the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of the laws of the forum state afforded the respective parties, and the basic equities of the situation."[16]
¶ 29 The dispute here arises directly from the Guarantors' purposeful actions in Washington. In the context of this dispute, the Guarantors' actions were substantial and purposeful in facilitating the loans by Freestone to MKA. Significantly, the Guarantors knew they were dealing with a group of Washington entities when they signed the guarantees. They should have reasonably anticipated that there was a possibility of being sued in Washington courts and that they might have to defend against an alleged breach of their guarantees. Accordingly, it does not offend traditional notions of fair play and substantial justice to allow Freestone to proceed against the Guarantors in our courts.
¶ 30 There are burdens to the Guarantors in requiring them to respond to this action in Washington. But we conclude that the equities weigh in favor of personal jurisdiction here based upon the Guarantors' "minimum contacts" with Washington in their personal capacities and the purposeful quality of their contacts in this state. We conclude that assertion of personal jurisdiction over the Guarantors does not offend traditional notions of fair play and substantial justice.
¶ 31 The Guarantors rely heavily on CTVC of Hawaii v. Shinawatra[17] to support the assertion that their interactions with Freestone did not rise to the level of "minimum contacts." That case is distinguishable.
¶ 32 There, personal jurisdiction over Shinawatra, a Thai businessman, was the main focus of plaintiffs' arguments. In analyzing that issue, this court stated that "minimum contacts" may be established if a transaction is initiated outside the state "in contemplation that some phase of it will take place in the forum state," or if the defendant did not initiate contact with Washington, but "a business relationship [with a Washington party] subsequently arises."[18]
*632 ¶ 33 Shinawatra's primary contacts with Washington included participation in the negotiation of a joint venture agreement resulting in the establishment of a Thai company, organized under Thai law.[19] He signed the joint venture agreement for the limited purpose of guaranteeing a portion of the management fee of the managing partner of the venture.[20] There is nothing in the opinion to indicate that the limited purpose guarantee had any impact in Washington.
¶ 34 The opinion further indicates that a Seattle attorney prepared an original draft of the joint venture agreement.[21] But the opinion also states that there was nothing in the record to show that Shinawatra employed that attorney.[22] Accordingly, this fact was not helpful to show that Shinawatra's actions met the minimum contacts test.
¶ 35 Shinawatra also attended some social dinners in Seattle.[23] The opinion states that these dinners involved potential business for matters unrelated to the disputes in the action. This, too, was not helpful to show that Shinawatra's actions met the minimum contacts test.
¶ 36 Shinawatra's participation in the joint venture, as set forth in the agreements, was limited to activities in Thailand.[24] Thus, these activities did not provide a basis for personal jurisdiction over him.
¶ 37 In sum, because Shinawatra's acts in Washington were so limited, this court concluded that he did not purposely avail himself of the privilege of doing business in Washington.[25] There was no personal jurisdiction over him.
¶ 38 To the extent the Guarantors rely on Shinawatra's execution of a guarantee in that case to buttress their arguments here, that reliance is misplaced. That guarantee was for a limited purpose: payment of the management fee of the managing partner of the joint venture. There was nothing to show an impact in Washington because of that limited purpose guarantee. None of the other facts of that case are material to the personal jurisdiction issue here.
¶ 39 Here, the guarantees of payment were for a much broader purpose. They induced Freestone to make substantial loans to MKA. Both the loans and the guarantees were to be paid in Washington. This action arises from the breach of the terms of those very guarantees. There are no genuine issues of material fact regarding personal jurisdiction over the Guarantors. Freestone was entitled to a judgment as a matter of law on this question.

CHOICE OF LAW
¶ 40 The Guarantors next argue that the trial court erred in applying Washington law to the guarantees because the guarantees do not contain a choice of law provision. They also argue that none of the other documents on which Freestone relies contain an effective choice of Washington law governing the guarantees. We agree.

The Guarantees
¶ 41 Washington courts will enforce an express choice of law clause in a contract so long as applying it does not violate the fundamental public policy of the forum state.[26]
¶ 42 "[A]bsent a choice of law by the contractual parties, the validity and effect of a contract are governed by the law of the state which has the most significant relationship to the contract. . . . This rule has been specifically extended to contracts of suretyship or guaranty."[27] "Courts must first evaluate the parties' contacts with each interested *633 jurisdiction, considering which contacts are most significant. The court then considers the interests and public policies of potential interested jurisdictions."[28]
¶ 43 Choice of law is a question of law that we review de novo.[29]
¶ 44 Here, each of the nine MKA promissory notes contains a subjoined guarantee of payment that follows the signature of MKA. The text of each guarantee states, in its entirety:
The undersigned hereby unconditionally guaranties the payment of all amounts due under this note. Upon default of maker to timely pay any amount due hereunder, lender may immediately demand, and the undersigned shall immediately pay, such past due amount.[30]
Either Abraham, individually, or both Abraham and Sugarman, each individually, signed each guaranty.
¶ 45 The plain words of the guarantees contain no mention of a choice of law. For reasons that we explain more fully later in this opinion, the choice of law for these guarantees of payment has important consequences. Specifically, the respective laws of Washington and California differ with respect to the manner in which Freestone may enforce its rights under the guarantees. Thus, the question is whether the trial court erroneously applied the laws of Washington to these guarantees, which contain no choice of law provision.
¶ 46 Based on our review of the record, it appears that the trial court applied Washington law to the guarantees based on a choice of law provision in the MKA promissory notes and/or an amendment to a note extension agreement. This was error.
¶ 47 It appears that Freestone argued below, and the trial court appears to have agreed, that the question of choice of law is governed solely by the fact that the guarantees are subjoined to each of the MKA notes.[31] We have found no persuasive authority for that proposition, and neither party has supplied us with any.
¶ 48 Each of the promissory notes that MKA signed contains the following choice of law provision:

This Note is governed by the laws of the State of Washington, without regard to the choice of law rules of that State.[32]
¶ 49 The above language makes clear that this choice of Washington law applies to the notes. But only MKA signed the notes. The Guarantors did not. Whether the Guarantors, who only signed the guarantees that are subjoined to the notes, are bound by the choice of law provision in the notes is a separate question.
¶ 50 The Guarantors correctly argue that a guarantee is a separate legal undertaking from the principal obligor's undertaking on a note. Robey v. Walton Lumber Co.[33] and Shannon-Vail Five Inc. v. Bunch[34] support this legal conclusion. In Robey, our supreme court stated:
"The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral. The fact that both contracts are written on the same paper or instrument does not affect the independence or separateness of the one from the other."[35]
*634 ¶ 51 In Shannon-Vail, the Ninth Circuit held that the choice of law provision contained in a personal guaranty was not integrated into the separate promissory note of the corporation to which the primary loan was made.[36] "[B]y definition, a guarantee is a separate undertaking in which the principal obligor does not join, and a guarantee exists independent of the original obligations between the principal obligor and the obligee."[37]
¶ 52 Here, the obligations of the notes are separate from the obligations of the guarantees. MKA agreed to repay the debt, including attorney fees, evidenced by the notes to Freestone. But the separate obligation of the Guarantors to Freestone is to "unconditionally guarantee the payment of all amounts due under [MKA's] note[s]."
¶ 53 More importantly, these two separate obligations were undertaken by different parties. Only MKA signed the notes containing the choice of law provision. The Guarantors signed the guarantees, which do not contain any choice of law provision. There is no incorporation of the terms of the notes into the guarantees. Thus, the documentation does not show that the Guarantors are bound by the choice of law provision in the notes.
¶ 54 We conclude that the reasoning of the trial court in applying the choice of law provisions in the notes to the guarantees was incorrect.

Amendment to Note Extension Agreements
¶ 55 Freestone next argues that the choice of law provision in the Amendment to Note Extension Agreements binds the Guarantors to a choice of Washington law for purposes of their guarantees. This argument is unpersuasive.
¶ 56 Freestone, MKA, and the Guarantors executed a series of note extension agreements. They also executed amendments to the note extension agreements. The amendments extended the due dates of the original promissory notes. The Guarantors signed the amendments in their personal capacities. Both amendments included an identical choice of law provision:

Governing Law: This . . . Amendment and the rights and obligations of the parties hereto shall be construed and interpreted in accordance with the laws of the State of Washington, excluding its conflicts of law provisions.[38]
¶ 57 We also note that the amendments also contain the following provision:

No Further Amendment. Except as expressly modified by this First Amendment, the Note Extension Agreement . . . shall remain unmodified and in full force and effect and the parties hereby ratify their respective obligations thereunder. MKA, Manager, Abraham and Sugarman acknowledges and agree that the execution and delivery by [Freestone] of this First Amendment shall not be deemed to create a course of dealing or otherwise obligate [Freestone] to forbear or execute similar amendments under the same or similar circumstances in the future.[39]
¶ 58 By the plain terms of these two provisions, the choice of Washington law is limited to the amendments. Moreover, the second of these two provisions makes clear that the prior documents to which the parties referred "shall remain unmodified and in full force and effect." In short, the amendments do not modify in any respect the lack of a choice of law in the guarantees.
¶ 59 To summarize, the trial court's rationale for application of the choice of law provisions in the MKA promissory notes was incorrect. Likewise, the choice of law provisions in the amendments to the note extension agreements are limited to these agreements and do not affect the guarantees.

Conflict of Laws
¶ 60 The Guarantors next argue that California law should govern the guarantees because the guarantees contain no choice of law *635 provision and California has the most significant relationship with the guarantees. Specifically, they argue that under California law, Freestone is prohibited from recovering against them without first proceeding against the collateral for the delinquent loans. The Guarantors argue that this issue should be analyzed under Restatement (Second) of Conflict of Laws § 188, which is applied where there is no effective choice of law by the parties.[40]
¶ 61 In response, Freestone argues that Restatement (Second) of Conflict of Laws § 194 should control. According to Freestone, applying this analysis is an appropriate alternative basis on which to affirm the trial court's ruling.
¶ 62 The California Civil Code provides as follows with respect to a creditor's right to proceed against a guarantor:
A surety may require the creditor . . . to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue, and which would lighten the surety's burden; and if the creditor neglects to do so, the surety is exonerated to the extent to which the surety is thereby prejudiced.[41]
A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not.[42]
¶ 63 In Washington, on the other hand, a creditor may pursue a guarantor directly without first proceeding against the security for the debt.[43]
¶ 64 The Guarantors argue that these respective laws of the two states create a conflict that should be analyzed on the basis of the Restatement. Freestone disagrees, arguing there is no actual conflict of laws. Freestone claims there is no conflict because the Guarantors signed guarantees of payment and, having done so, waived the protections of the California statutes.
¶ 65 "`When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis.'"[44] "If the result for a particular issue `is different under the law of the two states, there is a `real' conflict.'"[45] Where the laws or interests of the concerned states do not conflict, "the situation presents a `false' conflict and `the presumptive local law is applied.'"[46]
¶ 66 Here, as to the question of waiver, Cal. Civ.Code § 2856(b) states,
A contractual provision that expresses an intent to waive any or all of the rights and defenses described in subdivision (a) shall be effective to waive these rights and defenses without regard to the inclusion of any particular language or phrases in the contract to waive any rights and defenses or any references to statutory provisions or judicial decisions.
¶ 67 The Guarantors argue that their guarantees of payment do not waive the protections of California law. According to them, this statutory language is merely consistent with California's statutory scheme which makes a guarantor "immediately" liable upon a principal obligor's default, and does not indicate an intent to waive the statutory protections.
¶ 68 We decline to resolve this question of waiver. The trial court should consider this question on remand since it was not previously argued to that court. Under the supreme court's precedent, the court must first *636 determine whether an actual conflict exists.[47] If the result is different under the laws of Washington and California under these circumstances, then there is an actual conflict. If not, there is no real conflict, and the law of Washington will apply.
¶ 69 We provide the following guidance to the trial court and the parties should the trial court decide on remand that there is an actual conflict of laws. In providing this guidance, we do not prejudge how the trial court should decide whether an actual conflict exists.
¶ 70 In analyzing a choice of law problem arising from a contractual dispute where there is no effective choice of law, Washington courts consider which state has the most significant relationship to the contract and apply that state's laws.[48] "[The most significant relationship] rule has been specifically extended to contracts of suretyship or guaranty."[49]
¶ 71 The Restatement (Second) of Conflict of Laws § 188(2) summarizes the factors that a court should consider in determining which state has the most significant relationship with the contracts in the absence of an effective choice of law.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.[50]
Here, the court did not perform a choice of law analysis under § 188. This is because it incorrectly concluded that the Guarantors were bound by the choice of law provision in the notes. Likewise, the trial court did not consider whether, as Freestone now argues on appeal, the test articulated in Restatement § 194 rather than § 188 should be applied to the guarantees.
¶ 72 We note that § 194, Contracts of Suretyship, states:
The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.[51]
¶ 73 The initial clauses of § 194 suggest that the choice of Washington law in the MKA promissory notes determines the law to be applied to the guarantees. But the clauses that follow make clear that the analysis to be applied in a particular case is more complex. In short, a determination of which state has the most significant relationship is required even if this section applies.
¶ 74 We acknowledge that our supreme court indicated in Potlatch No. 1 Fed. Credit Union v. Kennedy[52] that normally the factors in § 188 determine the law applicable to suretyship contracts.[53] This dicta is consistent with the comments to § 194:
[T]he validity of the suretyship contract and the rights created thereby will usually *637 be determined by the law which governs the principal obligation. In the nature of things, the two contracts will usually be closely related and have many common elements. Particularly when the two contracts are contained in the same instrument or when both were made at around the same time, application of ordinary choice-of-law rules (see § 188) will frequently lead to a decision that both contracts are governed by the same law.[54]
But the comments to the same section also state:
On occasion, a state which is not the state whose local law governs the principal obligation will nevertheless, with respect to the particular issue, be the state of most significant relationship to the suretyship contract and the parties and hence the state of the applicable law.[55]
¶ 75 For these reasons, the trial court may be required to consider the effect of these sections of the Restatement to resolve the choice of law question regarding the manner of enforcement of the guarantees. We decline, on this record and briefing, to resolve that question in the first instance. On remand, the parties should present this question and the related question of waiver to the trial court.

SUBORDINATION AGREEMENT
¶ 76 MKA argues that the trial court erred in dismissing MKA's motion to dismiss for lack of subject matter jurisdiction. It contends that Gottex is a necessary party to this action under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, and CR 19(a). MKA also argues that the trial court erred in dismissing its counterclaim for breach of the subordination agreement. We are not persuaded by these arguments.

Uniform Declaratory Judgments Act and CR 19(a)
¶ 77 The UDJA provides in relevant part:
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.[56]
¶ 78 CR 19(a) requires the joinder of all persons with an interest in the action whose interest may be impaired if they are not joined.
A person . . . shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest. . . . If he has not been so joined, the court shall order that he be made a party.[57]
¶ 79 We review de novo the trial court's conclusions under the UDJA.[58] The trial court's decision on whether a party is necessary under CR 19(a) is reviewed for an abuse of discretion.[59]
¶ 80 The loan subordination agreement among MKA, Freestone, and Gottex includes three provisions that are relevant to our inquiry:
(4) Notwithstanding anything herein to the contrary, [Freestone] will forbear any action against [MKA] for the collection or payment of the [Freestone notes] until such time as the Senior Liabilities have been fully and indefeasibly paid, satisfied and discharged.
(6) [Freestone] shall not, without the prior written consent of [Gottex] exercise any rights . . . as a secured party, with respect to the enforcement of its rights as a secured party, until all of the obligations to [Gottex] have been satisfied in full. [Freestone] *638 hereby subordinates any and all security interests which [Freestone] now has or hereafter acquires in any assets of MKA, to the security interests of [Gottex]. . . which [Gottex] now has or hereafter acquires, in any and all of the assets of MKA ("the Collateral").
(13) The provisions of this Agreement are solely for the purpose of defining the relative rights of [Freestone] and [Gottex]. Nothing contained in this Agreement is intended to or shall impair, as between [Freestone] and [Gottex], the obligation of [MKA] to pay the [Freestone notes] as and when the same shall come due and payable. . . nor shall anything herein prevent [Freestone] from exercising all remedies otherwise permitted by applicable law or under or with respect to the [Freestone notes] upon default, subject to the restrictions set forth in this Agreement. . . .[60]
¶ 81 MKA claims that because interpretation of the subordination agreement affects Gottex, the trial court erred by failing to require Gottex to be joined as party to this action under both the UDJA and CR 19(a). We disagree.
¶ 82 Under the UDJA, a party must be joined in a declaratory judgment action if the declaration sought would affect any interest of that party.[61] Under CR 19(a), a person must be joined only if that person claims an interest relating to the subject matter of the action and adjudication in his absence will impair or impede his ability to protect that interest.
¶ 83 Here, there is no evidence that the subject of this declaratory judgment action would affect any claim or interest of Gottex, the holder of senior debt owed by MKA. Freestone sought three things in this action: (1) a declaration stating that MKA was in default on its obligations to Freestone under the notes, (2) money damages and attorney fees against the Guarantors, and (3) an injunction requiring MKA and the Guarantors to perform certain reporting obligations under the note extension agreements. None of these claims could affect any actual interest of Gottex.
¶ 84 Freestone did not seek "collection or payment" of any of the delinquent MKA notes, as prohibited by paragraph (4) of the subordination agreement. Nor did Freestone seek to exercise its rights as a secured creditor with respect to any collateral, as prohibited by paragraph (6) of the subordination agreement. Significantly, paragraph (13) of the subordination agreement expressly acknowledges that Freestone retains the right to "exercis[e] all remedies otherwise permitted by applicable law or under or with respect to the [Freestone notes] upon default. . . ."[62] The plain words of the subordination agreement do not support MKA's argument that Freestone is barred from seeking the relief sought in this declaratory judgment action because Gottex is a necessary party.
¶ 85 MKA argues that the term "collection or payment" in paragraph (4) should be interpreted broadly to include this declaratory judgment action. The plain words of the agreement defeat that argument.
¶ 86 Here, there is no request for any monetary judgment against MKA. The monetary judgments here are only against the Guarantors.
¶ 87 Nonparty interests that are merely "speculative and secondary to the issue at hand" are insufficient to warrant dismissal under the UDJA.[63] At most, the interests of Gottex that MKA suggests are speculative and secondary to the issues in this case. Joinder of Gottex was not required.
¶ 88 Similarly, in circumstances where a plaintiff does not seek adjudication of the contractual rights or obligations of a nonparty, joinder under CR 19 is not required.[64]
*639 ¶ 89 Here, there is no attempt to adjudicate any rights or obligations of Gottex. Consequently, the trial court did not abuse its discretion in denying MKA's motion to dismiss for lack of subject matter jurisdiction.

MKA's Breach of Contract Claim
¶ 90 MKA next argues that Freestone breached the loan subordination agreement. It essentially relies on the same underlying allegations that we discussed with respect to subject matter jurisdiction.
¶ 91 A court will give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.[65] The dismissal of defenses and counterclaims on summary judgment is reviewed de novo.[66]
¶ 92 The subordination agreement states that "[Freestone] will forbear any action against [MKA] for . . . collection or payment . . . ."[67] The agreement does not state that Freestone will forbear any action against MKA. This is a declaratory judgment action, not one for collection or payment of the delinquent MKA loans. Because Freestone expressly reserved the right to exercise all remedies not precluded by the subordination agreement, there has been no breach of the subordination agreement.
¶ 93 MKA also argues that Freestone's declaratory action violates the "intent" of the subordination agreement not to distract MKA from its business. We disagree.
¶ 94 A court may go outside the plain language of the contract only "`to determine the meaning of specific words and terms used' and not to `show an intention independent of the instrument' or to `vary, contradict or modify the written word.'"[68]
¶ 95 Here, the plain language of the subordination agreement specifies the parties' intent: "The provisions of this Agreement are solely for the purpose of defining the relative rights of [Freestone] and [Gottex]."[69] Nothing in the agreement states an intent not to distract MKA from its business. Moreover, MKA does not argue that extrinsic evidence requires a different reading of this plain language.
¶ 96 Finally, MKA argues that Freestone breached the agreement by seeking a declaration of default. Again, there is nothing in the language of the subordination agreement that prevents Freestone from seeking a declaration of the uncontested conclusion that the loans are in default.
¶ 97 Freestone does not seek any monetary judgment against MKA. The monetary judgments that are before us are solely based on the guarantees of Abraham and Sugarman. These are their separate legal obligations.
¶ 98 The trial court properly dismissed MKA's claim that Freestone breached the subordination agreement.
¶ 99 We affirm in part, reverse in part, and remand for further proceedings.
¶ 100 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
WE CONCUR: APPELWICK and GROSSE, JJ.
NOTES
[1] RCW 4.28.185(1)(a).
[2] Deutsch v. West Coast Mach. Co., 80 Wash.2d 707, 711, 497 P.2d 1311, cert. denied, Kansai Iron Works, Ltd. v. Marubeni-Iida, Inc., 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).
[3] Shute v. Carnival Cruise Lines, 113 Wash.2d 763, 767, 783 P.2d 78 (1989).
[4] Perry v. Hamilton, 51 Wash.App. 936, 940, 756 P.2d 150 (1988).
[5] Kulko v. California Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).
[6] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
[7] Id. at 479, 105 S.Ct. 2174.
[8] CTVC of Hawaii, Co., Ltd. v. Shinawatra, 82 Wash.App. 699, 707-08, 919 P.2d 1243 (1996).
[9] Id. at 708, 919 P.2d 1243.
[10] Id.
[11] Id.
[12] Declaration of Justin Young, Clerk's Papers at 337.
[13] Deposition of Michael A. Abraham, Clerk's Papers at 261.
[14] Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc., 71 Wash.2d 679, 684, 430 P.2d 600 (1967).
[15] Deposition of Michael Abraham, Clerk's Papers at 260.
[16] Raymond v. Robinson, 104 Wash.App. 627, 641, 15 P.3d 697 (2001); Shute, 113 Wash.2d at 767, 783 P.2d 78.
[17] 82 Wash.App. 699, 919 P.2d 1243 (1996).
[18] Id. (footnotes omitted).
[19] Id. at 712, 919 P.2d 1243.
[20] Id. at 713, 919 P.2d 1243.
[21] Id.
[22] Id.
[23] Id. at 712-714, 919 P.2d 1243.
[24] Id. at 716, 919 P.2d 1243.
[25] Id. at 714, 919 P.2d 1243.
[26] McGill v. Hill, 31 Wash.App. 542, 547, 644 P.2d 680 (1982).
[27] Granite Equip. Leasing Corp. v. Hutton, 84 Wash.2d 320, 324, 525 P.2d 223 (1974) (citing Potlatch No. 1 Fed. Credit Union v. Kennedy, 76 Wash.2d 806, 459 P.2d 32 (1969)).
[28] Ito Intern. Corp. v. Prescott, Inc., 83 Wash. App. 282, 289, 921 P.2d 566 (1996) (citing In re Badger Mountain Irr. Dist. Securities Litig., 143 F.R.D. 693, 699-700 (W.D.Wash.1992)).
[29] Erwin v. Cotter Health Centers, 161 Wash.2d 676, 691, 167 P.3d 1112 (2007) (citing Seizer v. Sessions, 132 Wash.2d 642, 650, 940 P.2d 261 (1997)).
[30] See, e.g., Clerk's Papers at 632.
[31] Report of Proceedings (Mar. 13, 2009) at 29-30.
[32] See, e.g., Clerk's Papers at 630-64 (emphasis added).
[33] 17 Wash.2d 242, 135 P.2d 95 (1943).
[34] 270 F.3d 1207 (9th Cir.2001).
[35] 17 Wash.2d at 255, 135 P.2d 95 (emphasis added).
[36] 270 F.3d at 1211.
[37] Id.
[38] Clerk's Papers at 711 (emphasis added).
[39] Clerk's Papers at 710-11.
[40] RESTATEMENT (SECOND), CONFLICT OF LAWS § 188 (1971).
[41] Cal. Civ. Code § 2845.
[42] Cal. Civ. Code § 2849.
[43] Warren v. Washington Trust Bank, 92 Wash.2d 381, 390 n. 1, 598 P.2d 701 (1979).
[44] Erwin, 161 Wash.2d at 692, 167 P.3d 1112 (quoting Seizer, 132 Wash.2d at 648, 940 P.2d 261).
[45] Id. (quoting Seizer, 132 Wash.2d at 648, 940 P.2d 261).
[46] Id. (quoting Seizer, 132 Wash.2d at 648-49, 940 P.2d 261).
[47] Erwin, 161 Wash.2d at 692, 167 P.3d 1112 (quoting Seizer, 132 Wash.2d at 648, 940 P.2d 261).
[48] Kennedy, 76 Wash.2d at 809-10, 459 P.2d 32.
[49] Granite Equip. Leasing Corp., 84 Wash.2d at 324, 525 P.2d 223.
[50] RESTATEMENT (SECOND), CONFLICT OF LAWS § 188 (1971).
[51] RESTATEMENT (SECOND), CONFLICT OF LAWS § 194 (1971) (emphasis added).
[52] 76 Wash.2d 806, 459 P.2d 32 (1969).
[53] Id.
[54] RESTATEMENT (SECOND), CONFLICT OF LAWS § 194, comment (b) (1971).
[55] Id. at comment (c).
[56] RCW 7.24.110.
[57] CR 19(a)(2).
[58] Nollette v. Christianson, 115 Wash.2d 594, 600, 800 P.2d 359 (1990).
[59] Gildon v. Simon Prop. Group, Inc., 158 Wash.2d 483, 493, 145 P.3d 1196 (2006).
[60] Clerk's Papers at 780-82.
[61] Henry v. Oakville, 30 Wash.App. 240, 244-45, 633 P.2d 892 (1981).
[62] Clerk's Papers at 782.
[63] Town of Ruston v. City of Tacoma, 90 Wash. App. 75, 82, 951 P.2d 805 (1998).
[64] Floor Express, Inc. v. Daly, 138 Wash.App. 750, 756-57, 158 P.3d 619 (2007).
[65] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash.2d 493, 504, 115 P.3d 262 (2005).
[66] Id.
[67] Clerk's Papers at 780 (emphasis added).
[68] Hearst Commc'ns, Inc., 154 Wash.2d at 503, 115 P.3d 262 (quoting Hollis v. Garwall, Inc., 137 Wash.2d 683, 695-96, 974 P.2d 836 (1999)).
[69] Clerk's Papers at 782.